UNITED STATES of America,
Plaintiff–Appellee,

v.

Kevin J. SHERBONDY,
Defendant–Appellant.

No. 87–5148.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1988.

Decided Dec. 15, 1988.

Barry A. Bisson, Huntington Beach, Cal., for defendant-appellant.

Kendra S. McNally, Leslie A. Swain, Asst. U.S. Attys. Los Angeles, Cal., for plaintiff-appellee.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, Cal., for amicus curiae California Attys. for Criminal Justice.

Ephraim Margolin, San Francisco, Cal., for amicus curiae Nat. Ass'n of Criminal Defense Lawyers.

Before NELSON, REINHARDT and O'SCANNLAIN, Circuit Judges.

REINHARDT, Circuit Judge:

## INTRODUCTION

Defendant Kevin J. Sherbondy appeals his conviction under 18 U.S.C. § 922(g)(1) for possession of a firearm by a felon, as well as his sentence under 18 U.S.C. § 924(e), which mandates a 15–year minimum prison term for persons who violate section 922(g)(1) and who have three prior convictions for "violent felonies." We affirm Sherbondy's conviction, but reverse his mandatory sentence because his prior offense of preventing or dissuading a witness from testifying in violation of California Penal Code § 136.1(c)(1) does not constitute a predicate "violent felony" for purposes of section 924(e)(1).

## I. FACTS

On November 11, 1986, Sherbondy's girlfriend informed law enforcement authorities that he was a felon on probation and that he had a gun in his home. At the time, Sherbondy was 23 years old. He was a full time college student and worked as a landscaper. On November 17, 1986, Officer John Fadule found a revolver hanging from Sherbondy's bed while conducting a legal search of his residence in San Clemente, California. Sherbondy was arrested for the unlawful possession of a firearm. He was advised of his rights and waived them. He admitted that he was a felon and that he had served three years in a California state prison for robbery. Sherbondy also acknowledged that he possessed the pistol and said that he had received it from a friend as a gift. The gun was manufactured in Connecticut.

Sherbondy was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), with sentence enhancement under 18 U.S.C. § 924(e)(1). He had three previous convictions: (i) robbery, on October 1, 1982; (ii) robbery, assault with a deadly weapon, first degree burglary, and false imprisonment, on December 23, 1982; and (iii) preventing or dissuading a witness from testifying in violation of California Penal Code § 136.1(c)(1), on August 5, 1986. All three convictions were in Orange County Superior Court. Each of these crimes was punishable by a term of imprisonment exceeding one year.

In a published opinion, the district court denied Sherbondy's motion to strike from the indictment the allegation that his prior conviction for preventing or dissuading a witness constituted a "violent felony" under section 924(e). *United States v. Sherbondy*, 652 F.Supp. 1267 (C.D.Cal.1987). The court also ruled that the government could introduce extrinsic evidence as to the nature of the prior offense to show that it was in fact a "violent felony." *Id.* at 1269. During the one day bench trial the government elicited live testimony from Steven Howard, a witness to the offense, and also introduced a factual statement made by

Sherbondy as part of his guilty plea. In his defense, Sherbondy submitted portions of the transcript from his sentencing in which the trial court had characterized his conduct as "not involving weapons or display of force or anything of that sort," but rather as involving only "two or three minutes of angry outburst" that had to be kept "in some type of perspective."

The district court found Sherbondy guilty of violating section 922(g)(1), and, after considering the evidence relating to Sherbondy's conduct, found that his prior offense of preventing or dissuading a witness constituted a "violent felony," thereby making him subject to sentencing under section 924(e). Sherbondy was sentenced to serve the mandatory minimum penalty of 15 years imprisonment without possibility of parole and ordered to pay a fine of $50. At his sentencing, the district judge told Sherbondy that "in all candor ... I wouldn't have sentenced you to 15 years if Congress had given me the discretion."

## II. VIOLATION OF 18 U.S.C. § 922(g)(1)

Sherbondy raises three challenges to his conviction under section 922(g)(1).[1] He first argues that the phrase "possess in or affecting commerce" in section 922(g) requires proof of a *present* connection with interstate commerce. He then contends that section 924(a) creates a requirement that the defendant know that his possession of the gun is illegal. Finally, he argues that section 922(g)(1) is unconstitutional because it violates the equal protection clause. We reject all three challenges.

### A. *Commerce Nexus*

■■■ Sherbondy's first argument involves the phrase "possess in or affecting

commerce" in 18 U.S.C. § 922(g). He contends that to satisfy its burden of proof the government had to show a present connection between his possession of the gun and interstate commerce. The district court, relying on case law interpreting former 18 U.S.C.App. § 1202(a),[2] a predecessor to section 922(g), held that the government need only prove that the gun had at one time crossed state lines. We agree.

Congress amended section 922(g) to its present form in 1986 in the Firearms Owners' Protection Act (FOPA). Prior to FOPA, section 922(g) dealt with the shipping of guns, section 922(h) dealt with the receipt of guns, and section 1202(a) dealt with the shipping, receipt, and possession of guns. All the provisions required some connection with interstate or foreign commerce. FOPA consolidated the three statutes at section 922(g), using language from each.

In a case construing section 1202(a), the Supreme Court held that possession was "in commerce or affecting commerce" as long as the gun had *at one time* travelled in interstate commerce. *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). The Supreme Court had once indicated in dicta that it might impose a more rigorous nexus standard to possession than that applied to receipt, *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 523–24, 30 L.Ed.2d 488 (1971), but in *Scarborough* it explicitly rejected such a distinction. *Scarborough*, 431 U.S. at 575 n. 11, 97 S.Ct. at 1969 n. 11. Thus, after *Scarborough*, the same "minimal" nexus standard applied to shipping, receipt, and possession.

Sherbondy argues that the plain language of section 922(g) abolishes the *Scar-*

---

1. 18 U.S.C. § 922(g) provides in part:
   It shall be unlawful for any person—
      (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; ...
   to ship or transport in interstate or foreign commerce, or *possess in or affecting commerce,* any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. (Emphasis supplied)

2. 18 U.S.C.App. 1202(a) provided in part:
      Any person who—
   (1) has been convicted ... of a felony ... and who receives, *possesses,* or transports *in commerce or affecting commerce* ... any firearm shall be fined ... or imprisoned.... (Emphasis supplied) This provision was amended in 1984, but the relevant language remained unchanged.

*borough* standard. He notes that section 922(g), unlike former section 1202(a), contains three different phrases regarding commerce: one modifying "ship or transport," one modifying "possess," and one modifying "receive." *See supra* note 2. Congress, he suggests, would not have used different phrases unless it meant to create distinct standards for each offense; thus, he argues, whereas "to receive any firearm or ammunition which has been shipped or transported" clearly allows for a past connection to commerce, "possesses ... in or affecting commerce" requires a *present* connection.

Sherbondy's argument has initial appeal. A literal reading of the statutory language tends to support his argument. However, statutory construction ordinarily consists of more than the bare examination of a statute's language. *Escobar Ruiz v. I.N.S.,* 838 F.2d 1020, 1023 (9th Cir.1988) (en banc) (even where language in statute is clear, consideration of legislative history is appropriate if plain meaning is at "variance" with policy of statute as a whole). Words, and even more so combinations of words, are usually susceptible of more than one meaning, particularly in matters as complex as legislative enactments. The legislation before us is no exception. Statutes or statutory amendments are frequently enacted in light of prior legislation and prior court decisions. This background, as well as the legislative history, ordinarily enables us better to understand the true meaning of a legislative enactment. *See, e.g., I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 432–33, 107 S.Ct. 1207, 1213–14, 94 L.Ed.2d 434 (1987); *see also Escobar Ruiz,* 838 F.2d at 1023.

The legislative origin of section 922(g) provides us with an explanation of the use of differing language and, thus, guidance as to the proper construction of the statute. Congress did not draft new language regarding commerce; it simply took the commerce phrases from each of the three predecessor statutes. Compare:

old 922(g): "to ship or transport any firearm or ammunition *in interstate or foreign commerce.*"

new 922(g): "to ship or transport *in interstate or foreign commerce* ... any firearm or ammunition."

old 922(h): "to receive any firearm or ammunition *which has been shipped or transported in interstate or foreign commerce."*

new 922(g): "to receive any firearm or ammunition *which has been shipped or transported in interstate or foreign commerce.*"

old 1202(a): "receives, possesses, or transports *in commerce or affecting commerce.*"

new 922(g): "possess *in or affecting commerce.*"

Thus, with respect to possession, Congress employed language that had already been construed by the Supreme Court, language that the *Scarborough* Court had construed as including a *past* connection. Given the correspondence between the new statute and its predecessors, and the absence of any indication in the legislative history that Congress intended to overrule the *Scarborough* standard, we conclude that "in or affecting commerce" has the same meaning that "in commerce or affecting commerce" had in section 1202(a).[3]

We observe that were we to accept Sherbondy's interpretation we would severely restrict the government's ability to prosecute felons possessing guns. It seems unlikely that Congress would take such a drastic step without comment or debate. As the Supreme Court noted in discussing section 1202(a), "Congress sought to reach possessions broadly, with little concern for when the nexus with commerce occurred." *Scarborough,* 431 U.S. at 577, 97 S.Ct. at 1970. In amalgamating sections 922(g), 922(h), and 1202(a), Congress gave no indication that it meant to narrow the statutory reach with respect to possession.[4] Ac-

---

**3.** The First Circuit reached the same conclusion in *United States v. Gilliard,* 847 F.2d 21 (1st Cir.1988) (*Scarborough* standard applies to section 922(g)).

**4.** In fact, the House Judiciary Committee Report specifically states that the effect of the new law is to prohibit persons "from receiving, *possessing,* or transporting firearms in interstate or

cordingly, we hold that the *Scarborough* minimal nexus standard applies to section 922(g) and that a past connection with commerce is enough. Here the past connection is established by the fact that the gun was manufactured in Connecticut and possessed by Sherbondy in California.

## B. *Knowledge of the Law*

We next consider whether the trial court erred by failing to apply the correct mens rea standard for a section 922(g) offense. Amici Curiae[5] argue that under section 924(a)(1)(B),[6] the government must prove that the defendant actually knew that his possession of the gun was illegal in order to establish a violation of section 922(g). To evaluate this contention we must again analyze the changes made in the firearms statutes by FOPA. Prior to FOPA, many of the firearms provisions were, on their face, strict liability offenses. FOPA added a set of mens rea requirements by amending section 924(a)(1) to punish certain violations only if they are committed "willfully" and others only if they are committed "knowingly." According to section 924(a)(1)(B), a violation of section 922(g) must be done "knowingly."

The FOPA amendments are somewhat confusing. Normally, the mens rea for a crime is set out as part of the substantive offense, not as part of a penalties provision, as in section 924(a). To further complicate matters, there is a separate section, section 924(e), which provides the penalty for persons who violate 922(g) and who also have three prior violent felony convictions.[7] At trial, the "knowingly" requirement contained in section 924(a) was not considered by the court or the parties.[8]

The most plausible interpretation of these provisions is that section 924(a)(1)(B) must be read into the substantive offense defined by section 922(g), even when the defendant is to be sentenced under 924(e). Otherwise, there would be two different mens rea standards under section 922(g): defendants who have three prior violent felonies could violate the section "unknowingly," while defendants who have fewer convictions could only violate it "knowingly." Furthermore, section 924(e)(1) is a sentence enhancement provision, not one that establishes a separate offense, *see United States v. West,* 826 F.2d 909, 911 (9th Cir.1987) (interpreting section 1202(a)), and so should not carry its own separate

---

foreign commerce or firearms *which have been shipped or transported* in interstate or foreign commerce." H.R.Rep. No. 495, 99th Cong., 2d Sess. 23 (1980) (citation omitted) (emphasis supplied), *reprinted in* 1986 U.S.Code Cong. & Admin. News 1327, 1349.

**5.** The California Attorneys for Criminal Justice and the National Association of Criminal Defense Lawyers.

**6.** Section 924(a)(1) provides in pertinent part:
    (a)(1) Except as otherwise provided in paragraph (2) of this subsection, subsection (b) or (c) of this section, or in section 929, whoever—
    (A) Knowingly makes any false statement or representation with respect to the information required by this chapter ...
    (B) *Knowingly* violates subsection (a)(4), (a)(6), (f), (*g* ), (i), (j), or (k) of section *922;*
    (C) Knowingly imports or brings into the United States ... any firearms or ammunition in violation of section 922(l); or
    (D) Willfully violates any other provision of this chapter
shall be fined not more than $5,000, imprisoned not more than five years, or both, and shall become eligible for parole as the Parole Commission shall determine. (Emphasis supplied)

**7.** 18 U.S.C. § 924(e) reads in part:
    (1) In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

**8.** This issue was raised by amici for the first time on appeal. We address it under the plain error standard. *See, e.g., United States v. Payseno,* 782 F.2d 832, 834 (9th Cir.1986); Fed.R. Crim.P. 52(b). "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir. 1986) (citation omitted). Were knowledge of the law an element of a section 922(g) offense, the district court's failure to consider that factor would constitute plain error. We also address this issue for the first time on appeal because it involves a purely legal issue and the interpretation of a new statute. *See, e.g., Abex Corp. v. Ski's Enterprise, Inc.,* 748 F.2d 513, 516 (9th Cir.1984) (dispensing with waiver rule when the "question is a purely legal one that is both central to the case and important to the public").

mens rea standard. Thus, it is highly likely that Congress used section 924(a) simply to avoid having to add "willful" or "knowing" into every subsection of section 922. Under section 924(a)(1)(B), we conclude that an "unknowing" act cannot constitute a violation of section 922(g).

■ As to amici's contention that "knowingly" means that knowledge of the law is required, we observe that there are few exceptions to the rule that ignorance of the law is no excuse. *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 562, 91 S.Ct. 1697, 1700, 29 L.Ed. 2d 178 (1971). In construing criminal statutes, including other provisions of section 922, we have often held that "knowingly" does not include knowledge of the law. *See, e.g., United States v. Flores*, 753 F.2d 1499, 1505 (9th Cir.1985) (knowledge required by section 922(e), which punishes a person who knowingly ships guns or ammunition without written notice to the carrier, does not include knowledge of legal duty); *United States v. Fierros*, 692 F.2d 1291, 1293–95 (9th Cir.1982) (ignorance of law is no defense to charge of knowingly or willfully harboring an alien in violation of 8 U.S.C. § 1324(a)), *cert. denied*, 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983).

Section 924(a)(1)(B) is more ambiguous than most statutes because it uses the phrase "knowingly violates subsection ... (g) ... of section 922", rather than specifying the conduct and attendant circumstances to which "knowingly" attaches. In *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, the Supreme Court construed a similar statute, 18 U.S.C. § 834(f), which applied to anyone who "knowingly violates any ... regulation" of the Interstate Commerce Commission regarding the transportation of corrosive liquids. The Court construed the word "regulation" as a "shorthand designation for specific acts or omissions which violate the Act." It then held that "knowingly" referred solely to the commission of those acts or omissions and did not require an awareness that they were proscribed by a regulation. *Id.* at

562–63, 91 S.Ct. at 1700–01. The Court went on to consider the legislative history of the statute as well as the background of the regulation and found that they were consistent with its conclusion. *Id.*

Here, as in *International Minerals*, the legislative history of section 924(a) makes it clear that knowledge of the law was not what Congress intended by the "knowingly" requirement. Indeed, in drafting section 924(a), Congress chose the word "knowingly" precisely because it did not want knowledge of the law to be an element of the offenses. The earliest versions of FOPA required that all offenses be "willful." *See, e.g.*, S. 1030, 97th Cong., 1st Sess. § 104(a) (1981); S. 1862, 96th Cong., 2d Sess. § 104(a), 125 Cong.Rec. 27,-383 (1979); "The Firearm Owner Protection Act: Hearings on S. 1030 before the Senate Judiciary Committee," 97th Cong., 1st & 2d Sess. (1982). The Treasury Department, along with various witnesses and members of Congress, objected that, with respect to certain serious offenses, including possession of guns by felons, the government should not be required to prove intent to violate the law. Hardy, *The Firearms Owners' Protection Act*, 17 Cumb.L.Rev. 585, 615–617, 647–648 (1987). In response to this objection, Congress reduced the mens rea requirement for the most serious offenses from "willfully" to "knowingly." *Id.* The House Judiciary Committee made its intent perfectly clear:

> Case law interpreting the criminal provisions of the Gun Control Act have [sic] required that the government prove that the defendant's conduct was knowing, but not that the defendant knew that his conduct was in violation of the law. It is the Committee's intent, that unless otherwise specified, the knowing state of mind shall apply to circumstances and results. This comports with the usual interpretations of the general intent requirements of current law.

H.Rep. No. 495, 99th Cong. 2d Sess. 25–26 (citation omitted), *reprinted in* 1986 U.S. Code Cong. & Admin. News 1327, 1351–1352.

In light of this legislative history, as well as the relevant case law, we conclude that knowledge of the law is not an element of a section 922(g) offense.[9]

## C. *Constitutionality of Section 922(g)(1)*

■ Invoking the equal protection component contained in the Fifth Amendment due process clause, *see Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954), Sherbondy challenges section 922(g)(1) because it singles out felons for unequal treatment. He argues that this classification fails under the rational basis standard. His argument is foreclosed by the Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), in which the Court upheld the constitutionality of section 1202(a)(1), which also singled out felons. The Court concluded:

> Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm.... This Court has recognized repeatedly that a legislature constitutionally may prohibit a convicted felon from engaging in activities far more fundamental than the possession of a firearm.

*Id.* at 66, 100 S.Ct. at 921 (citations omitted). This holding regarding section 1202(a) is fully applicable to section 922(g). We therefore conclude that section 922(g) does not violate Sherbondy's equal protection rights. *See also, United States v. Baker*, 850 F.2d 1365, 1372 (9th Cir.1988) (rejecting equal protection challenge to classification of "three time burglars and robbers" for purposes of mandatory and enhanced penalties upon conviction of weapons violation).

For all the above reasons, we hold that Sherbondy was properly convicted of violating section 922(g)(1).

## III. SENTENCING UNDER 18 U.S.C. § 924(e)(1)

Sherbondy challenges his sentence enhancement under section 924(e)(1). That section provides in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years ...

"Violent felony" is defined at section 924(e)(2)(B), as follows:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The district court held that Sherbondy had three previous "violent felony" convictions and so was subject to sentencing under section 924(e)(1). Sherbondy concedes that two of his prior offenses were "violent felonies." The question is whether his third felony conviction, a violation of the California witness intimidation statute, was also a "violent felony" for purposes of section 924(e)(1).

In 1986, Sherbondy was convicted on a guilty plea for a violation of California Penal Code § 136.1(c)(1), which makes it a felony to "prevent or dissuade" a witness or victim from testifying in a trial

> [w]here the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.

---

**9.** We do not mean to imply any view on the meaning of the term "willfully" as it applies to other provisions of the chapter. *See* section 924(a)(1)(D). The refusal of Congress to use that term in section 924(a)(1)(B) makes it clear that knowledge of the law is not required under 922(g). However, a more careful study than we are required to make here would be needed in order to determine what "willfully" means under those other provisions.

In its opinion denying Sherbondy's motion to strike from the indictment the witness intimidation offense as constituting a third "violent felony," the district court acknowledged that the California statute on its face does not match the definition of "violent felony" because it includes threats and violence against property as well as persons. 652 F.Supp. at 1268. Thus, regarding subsection (i) of 924(e)(2)(B), the district court concluded that the conviction did not have "as an element" the threat or use of force against another and so did not on its face qualify under subsection (i) as a "violent felony." *Id.* at 1269. However, the court concluded that the word "conduct" in subsection (ii) suggested that it would be appropriate to determine whether the conduct underlying the conviction in fact had involved the use of physical force against a person for purposes of subsection (i).[10] *Id.* at 1268–69. It held that it would permit the introduction of extrinsic evidence to establish relevant facts and allowed the government to introduce a statement of underlying facts which Sherbondy had made as part of his guilty plea to the section 136.1(c)(1) offense; it also allowed the government to put on live testimony from a witness to the offense. The government's evidence tended to prove that the threat involved in the witness intimidation conviction was directed at a person. In his defense, Sherbondy submitted an excerpt from the transcript of his sentencing for the 1986 conviction.

After considering all the evidence, the district court held that Sherbondy had committed a "violent felony" under subsection (i). The district judge said that he thought the 15–year sentence was too harsh for Sherbondy's offense, but that the provision regarding three violent felonies precluded him from imposing a shorter sentence. For the reasons set forth below, we conclude that the district court erred when it considered evidence regarding the underlying facts of the conviction and when it concluded that a violation of California Penal Code § 136.1(c)(1) can constitute a "violent felony" for purposes of section 924(e)(1).

### A. State or Federal Law

Sherbondy and amici argue that we should look to state law to determine whether a prior offense constitutes a "violent felony." Amici base their argument on the fact that 18 U.S.C. § 921(a)(20) requires the courts to follow the law of the jurisdiction in which the proceedings were held when determining what constitutes a *conviction* for purposes of the firearms provisions.[11] As amici acknowledge, section 921(a)(20) was passed on May 19, 1986, and the term "violent felony" was not added to section 924(e) until October 27, 1986; thus, Congress did not have the definition of "violent felony" in mind when it passed section 921(a)(20). Nonetheless, amici ask us to read that section as "a strong statement that state law be respected when state convictions are used in federal gun prosecutions."

While sympathetic to amici's concerns, we find them misplaced here. What constitutes a "violent felony" for purposes of 924(e)(1) is a very different question from what constitutes a conviction under state law. Congress enacted section 921(a)(20) for a specific purpose. Under prior case law, federal courts were allowed to use a conviction which a state had officially expunged as a predicate for a felon-with-a-

---

**10.** Although the opinion is not completely clear on this point, it appears that the district judge did not determine whether the California witness intimidation statute, or Sherbondy's conduct, implicated subsection (ii), but rather focused exclusively on whether the language of subsection (ii) affected the interpretation of subsection (i). 652 F.Supp. at 1269. *See* Part III.B., *infra*.

**11.** 18 U.S.C. § 921(a)(20) states in pertinent part:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

gun charge. *See, e.g., Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). The unfairness of this procedure was aptly summarized by Judge Kozinski: "[T]he policies of the two governments are at loggerheads. The state wishes to give the defendant a clean slate, yet federal law makes the record indelible." *United States v. Tallmadge,* 829 F.2d 767, 782 (9th Cir.1987) (Kozinski, J., dissenting). Moreover, defendants whose convictions were erased under state law had every reason to believe that the slate had been wiped clean, and no reason to expect the expunged convictions to reappear in a later federal proceeding.

■ The definition of "violent felony" in 924(e) does not pose any fairness or notice problem. The objectives of federal and state law are not in conflict, and a person with three unexpunged felonies on his record should not be surprised to find them used against him when he is sentenced under FOPA.

■ Congress gave much consideration to the definition of "violent felony." Competing definitions were drafted, debated, and amended before section 924(e)(2)(B)(i) and (ii) were passed. *See infra* part III. B.2. If Congress had intended that state law be determinative, surely it would have said so, rather than defining the term itself. Thus, we conclude that section 921(a)(20) is not applicable to section 924(e), and we look to the federal definition when determining whether a defendant was convicted of a violent felony. *Cf. United States v. Harden,* 846 F.2d 1229, 1232 (9th Cir.1988) (federal law applies when determining whether prior convictions based on several counts of a pleading are to be viewed as one conviction for purposes of sentence enhancement under 1202(a)).

**B. Categorical or Fact–Specific Inquiry**

We must next determine whether, as a matter of federal law, a violation of California Penal Code § 136.1(c)(1) constitutes a "violent felony" under FOPA. We begin this inquiry by considering whether a district court may conduct a factual inquiry into the specific circumstances of the individual's prior offense or may determine only whether the category of offense committed falls within the definitions of 924(e).

**1. Subsection (i)**

■ Subsection (i) of section 924(e)(2)(B) provides that a violent felony must have *"as an element* the use, attempted use, or threatened use of physical force against the person of another...."* (emphasis supplied) In *United States v. Springfield,* 829 F.2d 860 (9th Cir.1987), we construed a clause nearly identical to subsection (i)—18 U.S.C. § 924(c), which proscribes the use of a firearm during a "crime of violence." [12]

The district court in *Springfield* considered the defendant's actual conduct in ruling that his commission of involuntary manslaughter was a "crime of violence." We expressly rejected this approach and said: "In determining whether involuntary manslaughter is a 'crime of violence,' we look to the definition in the statute." *Id.* at 862.[13] We held that subsection (A) of section 924(c)(3) did not apply to involuntary manslaughter because the use, attempted use, or threatened use of physical force is not included *as an element* of that offense as it is defined in 18 U.S.C. § 1112. *Id.* We concluded that the phrase "as an element" requires an examination of the statute that delineates the offense of which the defendant was convicted and precludes any inquiry into the defendant's actual conduct.

12. "Crime of violence" is defined in subsection 924(c)(3) as a felony that
  "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another ...".
This section is identical to subsection (i) of section 924(e)(2)(B), except that the former refers to force against property as well as persons.

13. Involuntary manslaughter is defined as "the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution or circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112.

The Fourth Circuit recently reached the same conclusion when construing subsection (i) of section 924(e)(2)(B), the provision at issue here. *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988). In *Headspeth*, the court held that the defendant was not subject to sentencing under that subsection because the crime of "storehouse breaking," as defined in a Maryland statute, "[did] not have as an element the use—actual, attempted, or threatened—of force against the person." 852 F.2d at 756.[14]

We see no legitimate reason to depart from our reasoning in *Springfield* or the Fourth Circuit's holding in *Headspeth*. There is nothing to suggest that Congress, when it included the "element" requirement in subsection (i), did not intend the word to have its accepted meaning in the criminal law, namely a "constituent part[ ] of a crime which must be proved by the prosecution to sustain a conviction." *Black's Law Dictionary* 467 (5th ed.1979). Establishing the precise nature of the acts of a given defendant has nothing to do with determining the "elements" of a given crime. The latter exercise is exclusively a matter of interpreting statutory or common law. Accordingly, we conclude that evidence of the specific acts involved in the offense is irrelevant under subsection (i).

### 2. Subsection (ii)

Subsection (ii) makes burglary, arson, extortion, the use of explosives, and crimes which otherwise involve "conduct that presents a serious potential risk of physical injury to another" "violent felonies" under section 924(e)(1). The district court did not expressly address the question whether a violation of California's witness intimidation statute can constitute a violent felony under subsection (ii). Even so, were we now to answer that question in the affirmative, we might be able to affirm Sherbondy's sentence on that ground. Thus, we next consider subsection (ii) and begin with the question whether that sub-

section contemplates inquiry into the specific conduct involved in an earlier conviction or whether, as in the case of subsection (i), the court is permitted to consider a prior offense only in its generic or categorical form.

The only circuit court case to address the question directly concluded that an inquiry into the specific conduct was prohibited. In *Headspeth*, the Fourth Circuit, after having determined that storehouse breaking was not a "violent felony" under subsection (i), considered whether the offense constituted a "violent felony" under subsection (ii). 852 F.2d at 756–59. The court noted that the phrase "any crime . . . that . . . involves conduct that presents a serious potential risk of physical injury to another" in subsection (ii) is ambiguous. We agree. The critical word is "crime." The word could be used in a generic sense, referring to an offense described in a statute or at common law, or it could be used in an individual sense, referring to a particular deed irrespective of the nature of the statutory or common law offense involved. *See Headspeth*, 852 F.2d at 759. If the former use is intended, we would be compelled to use the same procedure for determining offenses under subsection (ii) as we use under subsection (i), and our task would be limited to answering a purely legal question. If, on the other hand, it is the facts and circumstances of the individual act that control, the federal court would be required to engage in a fact-finding mission involving an inquiry into the precise nature of the individual's earlier conduct.

In *Headspeth*, the defendant had thrown a brick through the plate glass window of a jewelry store; thus, his individual act may have created a risk of injury to people. The court decided, however, that it was required to limit its inquiry to the nature of the offense defined in the statute. It held:

---

**14.** The Maryland statute defined storehouse breaking as "breaking [into] a storehouse, filling station, garage, trailer, cabin, diner, warehouse or other outhouse or into a boat in the day or night with an intent to commit murder or felo-

ny therein, or with the intent to steal, take or carry away the personal goods of another of the value of $300 or more therefrom. . . ." Md.Ann. Code art. 27, § 32 (1987).

[T]he catchall, "otherwise" clause of 18 U.S.C. § 924(e)(2)(B)(ii) must be limited in its application to offenses which, as defined, pose by their very nature a serious potential risk of injury to another. Since ... Maryland's crime of storehouse breaking is not such an offense, we conclude that it is not a "violent felony" within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii).

852 F.2d at 759.

The *Headspeth* court found the statutory language ambiguous and the legislative history of "no guidance." As we have already noted, we agree that the language is ambiguous; however, we believe that the legislative history provides support for the conclusion reached by the Fourth Circuit. The provision now codified as section 924(e)(1) was enacted as part of the Armed Career Criminals Act and originally codified at section 1202(a). Section 1202(a) imposed the mandatory 15–year sentence on persons convicted of receiving, possessing or transporting a firearm who have three prior convictions for robbery or burglary. After recodifying the enhancement provision at section 924(e)(1) as part of FOPA, Congress decided to expand the predicate offenses to include "serious drug offenses" and "violent felonies." The definition of "violent felony" was vigorously debated, and two rival bills with different definitions were introduced. H.R. 4639 used the same definition of "crime of violence" which is used in section 924(c):

(A) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or

(B) any felony which, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

H.R. 4639, 99th Cong., 2d Sess. (1986). In *Springfield* we construed *both* parts of this definition to mandate a categorical, rather than a case-by-case determination. *United States v. Springfield*, 829 F.2d at 862–63. Thus, no inquiry into the underlying conduct involved in the conviction would have been permitted had the initial version of the bill been adopted.

H.R. 4768 proposed a much more limited definition, which eliminated crimes against property:

"[V]iolent felony" means any State or Federal felony that has as an element the use, attempted use, or threatened use of physical force against the person of another.

H.R. 4678, 99th Cong., 2d Sess. (1986). This became section 924(e)(2)(B)(i), which, as we discussed above, clearly mandates a categorical inquiry. The drafters of both bills, then, began with categorical definitions; their major disagreement was over whether to include property crimes or only crimes against persons.

At the hearings before the House Judiciary Committee, proponents of the broader bill argued that at least some property crimes should be included. A representative of the Administration testified, "[W]hat crimes against property should be included? We think, burglary, of course; arson; extortion; and various explosive offenses." *Armed Career Criminal Legislation*, 1986: Hearing on H.R. 4639 and H.R. 4678 Before the Subcommittee on Crime of the House Judiciary Committee, 99th Cong. 2d Sess. 14 (1986) (statement of James Knapp, Deputy Assistant Attorney General, U.S. Dept. of Justice). Throughout the hearings, members of Congress and other witnesses consistently discussed the provisions in terms of those categories of property crimes that should be included. *See e.g.,* Hearing on H.R. 4639, etc., *supra,* at 11–12 (statement of Representative Ron Wyden); 46–47 (statement of Senator Arlen Specter). An underlying concern expressed in this approach was the desire to include those categories of property offenses which intrinsically involved a risk of injury to persons. A new bill drafted to address this concern was passed out of the Committee. It provided:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) involves conduct that presents a serious potential risk of physical injury to another.

H.R. 4885, 99th Cong. 2d Sess. (1986). However, those who sought to insure that the bill would cover certain property crimes thought that the compromise bill did not clearly enough accomplish that purpose. Subsection (ii) was then amended a final time to list specifically burglary, arson, extortion, and use of explosives as "violent felonies" and agreement was reached on its present form.

One conclusion we draw from our review of the legislative history is that Congress consistently discussed subsection (ii) in categorical terms: i.e., in terms of what offenses it would include. There is no indication that Congress intended that a particular statutory or common law crime would in some circumstances constitute a violent felony and in other circumstances not, depending upon how the offense was committed. The first part of subsection (ii) sets forth specific property offenses that Congress expressly wanted to cover: that part, like subsection (i), is clearly categorical; a burglar, for example, cannot claim as a defense that his or her particular conduct was non-violent. The second part of subsection (ii), the "otherwise" clause, is the generalized version of this categorical approach; it refers to other unspecified categories of offenses that present a serious potential risk of physical injury to another. We do not view the "otherwise" clause as

an indication by Congress of its intention to abandon the categorical approach it uses throughout the section in favor of one that requires courts to examine individual acts in the case of the unspecified offenses; rather we construe it as an attempt to set forth a general description that serves to expand the intended categories beyond the four explicitly listed.[15]

In reaching this conclusion, we note that it is unlikely that Congress would implicitly authorize, without any express language in FOPA, ad hoc mini-trials regarding an individual's prior criminal conduct. The problems with such hearings are evident. Witnesses would often be describing events years past. Such testimony is highly unreliable. As in Sherbondy's case, the witnesses might be persons who did not even testify at the earlier criminal proceeding. In many cases, witnesses to the events in question might be unavailable altogether. Additionally, there would likely be substantial problems with court records and transcripts relating to earlier convictions. These problems become especially difficult in a case like Sherbondy's where, because the conviction was based on a guilty plea, there is little or no contemporaneous record developed. The difficulties inherent in conducting evidentiary hearings many years after the event provide additional support for our view that Congress intended judges considering sentences under FOPA to determine only whether the statutory or common law offenses of which the individual was previously convicted are ones that are covered by by section 924.[16]

---

15. We also observe that this view is consistent with the approach taken in *Springfield*. While that case involved section 924(c), the definition of "crime of violence" is very similar to that of "violent felony" in section 924(e)(2)(B), with a close parallel between subsection 924(c)(3)(B) and the "otherwise" clause of subsection (ii) discussed immediately above. In *Springfield* as here, we interpreted the relevant provision to require a categorical, as opposed to a fact-specific, inquiry. 829 F.2d at 862–63.

16. We recognize that there may be an intermediate approach to sentencing under the statute, in which a sentencing judge would neither limit his analysis to the category of offense committed nor conduct a full hearing into the individu-

al acts of the defendant, but rather would look only to the court records of prior convictions. While this approach might remedy some of the stale evidence and other testimonial problems to which we adverted above, substantial evidentiary problems remain. The record would still be deficient in those cases where convictions were the result of guilty pleas. Individual judges would have to determine whether to consider the more subjective portions of the record, including presentence and probationary reports and the comments and opinions of the trial judge. Lacking any expression of Congress' intent that judges imposing sentences under FOPA should adopt such an approach, we decline to do so here.

Subsections (i) and (ii) thus work in tandem. Section (i) covers those categories of crime in which "physical force against the person of another" must always be proved to obtain a conviction; the section covers only those statutes which require proof of violence in each case. Section (ii) then supplements the scope of the term "violent felony" in two respects. First, it includes four specific categories of property crime, each of which Congress believed involves conduct which poses a particularly serious "risk of injury to another," although violence is not an element of the offense. Second, through its final "otherwise" provision, the section reaches other statutory and common law offenses not covered by section (i) that generically involve a similarly serious risk.

Unfortunately, the section's legislative history does not offer any specific examples of offenses Congress thought the statute would cover in the "otherwise" clause. Still, two examples demonstrate the manner in which particular offenses fail to meet the test of subsection (i) yet are covered by the final clause of subsection (ii). We can assume, for instance, that subsection (ii) covers involuntary manslaughter, which " 'by its nature' involves the death of another person" and is "highly likely to be the result of violence," *Springfield*, 829 F.2d at 863 (interpreting section 924(c)(3)), even though physical force is not an element which the prosecution must prove to obtain a conviction. *See id.* at 862.

Similarly, one of the ways the Model Penal Code defines kidnapping is "unlawfully remov[ing] another from his place of residence or business, or a substantial distance from where he is found ..." Model Penal Code, Section 212.1. Violence is not an element of kidnapping defined this way, for removal of a person through trickery or deceit can be as unlawful as abduction at gunpoint. Thus, subsection (i) would not apply to a conviction under the kidnapping statute. Nevertheless, kidnapping entails a "serious potential risk of physical injury" to the victim, making the offense a "violent felony" under subsection (ii).

We note one further reason to adopt the construction we have discussed; it is one we share with the *Headspeth* court. That court noted that, when faced with an ambiguous statute and no (or limited) guidance from the legislative history, the rule of lenity required it to resolve the ambiguities in favor of the accused. 852 F.2d at 759. We agree. Where the language of a penal statute admits of more than one interpretation, courts should choose the least harsh construction, the one least likely to impose penalties Congress did not intend. *See Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). In this case, a categorical construction of the "otherwise" clause is the approach most consistent with the principle of lenity.[17]

Given the analysis above, including our decision in *Springfield*, the Fourth Circuit's *Headspeth* decision, the legislative history of section 924(e), and the rule of lenity, we conclude that subsection (ii) does not permit inquiry into the individual defendant's specific conduct in committing the prior offense. When determining whether a defendant has been convicted of three prior "violent felonies," the trial court may, under both subsections (i) and (ii), look only to the fact of conviction and to the statutes establishing the crimes of which the defendant was convicted. If the

---

**17.** The rule of lenity is normally thought to apply only to an interpretation of a statute which ensures more lenient results in all cases arising under that statute. We note that the construction of section 924(e) we announce today could conceivably yield a harsher result for a narrow group of potential defendants, i.e. those who could prove, in the sort of mini-trials we disapprove, that the particular criminal acts they committed did not entail the risk of violence or harm to persons the section demands. The rule nonetheless has force in this case, for our construction of the scope of the "otherwise" clause of subsection (ii) will not make any but those crimes which clearly fall within the narrow reach of that subsection appropriate bases for sentence enhancement. (*infra* at 1010–11) We believe, therefore, that our decision will be consonant with the principle of lenity in the case of the substantial majority of defendants. For all defendants, furthermore, a single, analytical inquiry into the categories of offenses avoids the potential harshness of inconsistent adjudication and reliance on subjective factors in determining the appropriateness of sentence enhancement.

statutory crimes come within the categories of offenses covered by 924(e)(2)(B), then sentence enhancement is appropriate.[18]

### 3. Conclusion

■ The answer to how section 924(e) should be construed is not readily apparent. The arguments in favor of a categorical approach, rather than one that requires an examination of the facts and circumstances of the particular criminal occurrence, are not overwhelming. Still, we believe it apparent that the weight of reason and precedent favors the former. Thus, we conclude that the district court erred when it permitted the government to introduce evidence relating to the specific facts underlying Sherbondy's prior witness intimidation conviction.

But our inquiry is not yet over. We must still consider whether the offense created by the California statute under which Sherbondy was convicted constitutes a "violent felony." If it does, sentence enhancement would be required, and the sentence imposed by the district court would be lawful.

### C. *California Penal Code § 136.1(c)(1)*

■ Our final question, therefore, is whether the offense defined by California Penal Code § 136.1(c)(1) falls within the categories of offenses covered by subsections (i) and (ii). Regarding subsection (i), force or threat of physical force against persons must be an element of the crime, and not merely a potential aspect of it. This is because, as we discussed *supra* in Part III.B.1., an "element" of a crime is a "constituent part" of the offense which must be proved by the prosecution *in every case* to sustain a conviction under a given statute.

California Penal Code § 136.1(c)(1) includes force or threat of force against *property* as well as persons. Under the California statute, force or threat of force against persons need not be alleged or proved in prosecutions for witness intimidation. Thus, it cannot be said to be an element of the crime the statute defines. Accordingly, we hold that a violation of California Penal Code § 136.1(c)(1) does not constitute a "violent felony" under subsection 924(e)(2)(B)(i).

As to whether the offense we consider here is a "crime ... that ... otherwise involves conduct that presents a serious potential risk of physical injury to another" and thus falls under subsection (ii), we first observe that section 136.1(c)(1) covers at least four distinct subsets of conduct: (i) force against persons, (ii) express or implied threats of force against persons, (iii) force against property, and (iv) express or implied threats of force against property. While the use of force against persons "presents a serious potential risk of physical injury to another," and we can assume for present purposes that the threat of force against persons does also, the risk to persons presented by the other two subsets is of a substantially lesser order.

In subsection (ii), Congress expressly covered the most serious "property crimes," all of which involve a substantial risk of injury to persons: burglary, arson, extortion, and use of explosives. It then included the "otherwise" clause to cover those other offenses, not covered by subsection (i), that pose a similar risk. *See supra* Part III.B.2. At the same time, the House Report notes that Congress wished to avoid "federalizing" a broad range of state crimes. In fact, the "otherwise" language was originally drafted by those

---

**18.** The "categorical" approach is not inconsistent with 18 U.S.C. § 3577, which states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." While it is true that section 924(e) is a sentence enhancement provision, determining what constitutes a "violent felony" (so as to trigger a mandatory minimum 15-year sentence) is a definitional question separate from the trial court's function of fixing a discretionary sentence to match an individual defendant's criminal conduct. Furthermore, we have concluded that the categorical approach is required under 924(c), which, like section 924(e), is a sentence enhancement provision. *See Springfield,* 829 F.2d at 862–63.

members of Congress who had opposed the inclusion of property crimes altogether and wished to limit the reach of the statute sharply. *Id.* This history leads us to a simple conclusion. Subsection (ii) should be construed narrowly and applied only to those categories of offenses which clearly meet the statutory test. Where a category is overly broad or inclusive, subsection (ii) is not applicable.

Accordingly, in examining section 136.-1(c)(1), we must determine whether the range of conduct which California has criminalized as "witness intimidation" is sufficiently narrow in scope and, more particularly, whether the California statute's undifferentiated treatment of offenses against persons and property precludes the classification of a conviction under the statute as a "violent felony" within the meaning of FOPA. The answer, in our view, is that the coverage of California section 136.-1(c)(1) greatly exceeds that contemplated by subsection (ii). The California statute covers far more than crimes that involve the actual or threatened use of force against persons. Rather, as the district court observed, it applies equally to acts such as a threat "to spray paint the word 'snitch' on the wall of the house of a potential witness to a traffic infraction." *United States v. Sherbondy,* 652 F.Supp. at 1268. We do not believe that a statute that treats actual assault on a person and threatened defacing of property similarly can be said to create a narrow category of criminal offenses which intrinsically "involves conduct that presents a serious potential risk of physical injury to another." Moreover, although Congress wanted to deal with a few specific types of property crime in section 924, it made manifest its desire not to have lesser property offenses deemed "violent felonies." For these reasons, we conclude that the extension of subsection (ii) to cover the California witness intimidation statute would be erroneous. Thus, we hold that offenses under California Penal Code § 136.1(c)(1) do not

---

**19.** Resting our decision on these grounds, we do not reach Sherbondy's constitutional challenges to section 924(e) or his contention that he should not be sentenced under that provision

constitute violent felonies for purposes of either subsection (i) or (ii).

We recognize that some acts of witness intimidation are serious offenses indeed and involve substantial risks of physical injury to persons. We also recognize that a state statute limited to witness intimidation involving violence or threats of violence against persons would pose a wholly different issue than the one we decide today. In this opinion, we consider only the California statute and do not intend to suggest that the witness intimidation statutes of other states would not meet the test of either subsection (i) or subsection (ii).

Since Sherbondy had not previously been convicted of three "violent felonies" for purposes of section 924(e)(1), he was improperly sentenced under that provision. We remand to the district court for resentencing under section 924(a).[19]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

because the government delayed his arrest until after the section took effect for the sole purpose of subjecting him to a greater penalty.