**Darrell I. LOWE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 89–4057.**

United States District Court, C.D. Illinois.

Dec. 20, 1989.

As Amended Dec. 21, 1989.

Darrell I. Lowe, pro se.

Bradley W. Murphy, Asst. U.S. Atty., Peoria, Ill., for respondent.

## ORDER

MIHM, District Judge.

Pending before the Court is Petitioner's Motion to Vacate, Set Aside or Correct a sentence pursuant to 28 U.S.C. § 2255. The Government was ordered to respond to one of the issues raised in Petitioner's Motion and that matter is now ready for decision. The Court finds that Petitioner has

stated a valid challenge to his sentence; his petition to correct his sentence is accordingly granted.

Petitioner, Darrell Lowe, was arrested in 1987 in the Katydid Tavern in Rock Island. At the time of his arrest he was in possession of a handgun. On April 8, 1987, he was charged by indictment with possession of a firearm as an armed career criminal, in violation of 18 U.S.C. § 924(e). Lowe stipulated, on advice of counsel, to having three prior convictions for violent felonies. He was found guilty by a jury and at the sentencing hearing on February 4, 1988, was sentenced to imprisonment for 15 years, the length of the sentence reflected enhancement because of his prior felony convictions. The Seventh Circuit affirmed his conviction on appeal. 860 F.2d 1370.

Petitioner argues that one of the prior felony convictions to which he stipulated was for an offense which does not fall within the statutory meaning of the term "violent felony," 18 U.S.C. § 924(e)(2)(B), which provides in pertinent part:

The term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The prior conviction which Petitioner asserts does not fall within that definition was for the offense of witness intimidation. Ill.Rev.Stat. ch. 38, ¶ 12–6(a). The relevant section of the statute provides as follows:

A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts: (1) Inflict physical harm on the person threatened or any other person or on property....

Petitioner argues that conviction for this offense is not a violent felony to be used for enhancement of sentence, because it includes a threat of harm to property. Petitioner relies upon case law from several other circuits which has interpreted the sentencing enhancement statute as excluding convictions which do not on their face fit within the meaning of "violent felony."

For example, in *United States v. Sherbondy*, 865 F.2d 996 (9th Cir.1988), the defendant appealed his conviction as well as his sentence. The Ninth Circuit reversed the mandatory sentencing under § 924(e), finding that his prior offense of witness intimidation did not constitute a violent felony for purposes of that statute. The California statute at issue did not require that force or threat of force against a person be proved. Rather, the state statute encompassed force or threat of force against property. The court concluded that subsection (i) of § 924(e)(2)(B) required only an examination of the statute setting forth the offense and precluded any inquiry into the defendant's actual conduct. If the statute would permit conviction for a threat against property, the court held that it did not fall within the scope of § 924(e)(2)(B)(i). Because the witness intimidation statute could be proved upon a showing of a threat to property, it did not fall within that subsection. Accordingly, the Ninth Circuit reversed the enhancement of Sherbondy's sentence.

The Government makes two arguments to the contrary. First, the Government claims that, on the plain language of the statute, related convictions qualify as separate convictions for purposes of enhancement, citing to *United States v. Towne*, 680 F.Supp. 687, 692 (D.Vt.1988). In that case, the district court held that two counts of armed robbery and two counts of attempted murder for which the petitioner had previously been convicted counted as four separate convictions for enhancement purposes. The Government asserts that under this reasoning Lowe would have four violent felony convictions without counting the conviction for intimidation, more than sufficient for enhancement purposes.

As Petitioner points out, the decision in *Towne* was appealed, *United States v. Towne*, 870 F.2d 880 (2nd. Cir.1989). On appeal, the Second Circuit considered the

issue of multiple convictions arising out of a single episode and rejected the precise argument the Government presents to this Court. The Second Circuit said:

> Although the question presented is one of first impression in this Circuit, it has been fairly well established in other circuits that § 924(e)(1)'s reference to convictions pertains to single episodes of felonious criminal activities that are distinct in time rather than literal convictions. [citations omitted].

*Id.* at 889–90.

In *Towne*, the Second Circuit also referred to the brief of the United States Solicitor General which was filed in opposition to the defendant's petition for certiorari in the case of *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986).

In that brief, the Solicitor General had acknowledged that every federal court of appeals that has considered this issue has adopted the multiple episodes approach and that there is simply no conflict among the courts of appeal with respect to this issue. 870 F.2d at 890. The court in *Towne* also compared § 924's enhancement provisions with other similar federal enhanced penalty provisions which require the sentencing court to focus on the number of prior criminal episodes rather than the number of convictions. *See, e.g.,* 18 U.S.C. § 3575(e)(1); 21 U.S.C. § 849(e)(1) (repealed 1987). 870 F.2d at 891.

The Court adopts the position espoused by the Second Circuit. In this case, that means the witness intimidation conviction must have been counted in order for the enhancement statute to have been triggered.

The Government also argues that Petitioner's conviction for witness intimidation should be considered a violent felony, relying on a statement in *Sherbondy* that the court did not intend "to suggest that the witness intimidation statutes of other states would not meet the test of § 924(e)(2)(B)." 865 F.2d at 1011. In essence, the Government states that *Sherbondy* should not be persuasive as to the Illinois statute. Because the Illinois statute is in essence the same as the one considered in *Sherbondy* (i.e. force against property can constitute the offense), this argument is rejected.

The Government does not go on to argue, however, that the *Sherbondy* analysis of § 924(e)(2)(B)(i) is unsound. Rather, the Government argues that Lowe's conviction for witness intimidation qualifies as a violent felony within the meaning of § 924(e)(2)(B)(ii). The focus of subsection (ii), according to the Government, is not upon the statutory elements of the offense, but rather upon the specific conduct involved, since subsection (ii) requires a determination as to whether the prior conviction "involves conduct that presents a serious potential risk of physical injury to another." In other words, the Government asserts that, if it is clear from the terms of the statute that a defendant's prior conviction involved a serious potential risk of physical injury to another, then the court need not delve into the defendant's conduct; on the other hand, if the statute encompasses conduct which would not necessarily fit within § 924(e)(2)(B)(ii)'s definition of a violent felony, then it is permissible, according to the Government, for the court to determine if the conviction was for a violent felony by referring to the charging document.

In this case, for example, the charging document indicates that Petitioner's 1977 conviction was for threat of harm to a person. Thus, according to the Government, Petitioner's intimidation conviction may not meet the elements test of subsection (B)(i) but it does pass the conduct test of subsection (B)(ii). Thus, the Government argues that Petitioner's intimidation conviction was a violent felony.

The Court disagrees. It is true that subsection (ii) encompasses a conviction which "otherwise involves conduct that presents a serious potential risk of physical injury;" however, as the court in *Sherbondy* discussed in detail, the legislative history behind that subsection indicates that Congress was concerned solely with property crimes which *also* necessarily present a risk of physical injury. 865 F.2d at 1006–

1010. The Government's argument takes the language quoted out of context.

Section 924(e)(1) was enacted as part of the Armed Career Criminal's Act; it imposed a mandatory 15 year sentence on a person who has three prior convictions for robbery or burglary and who is then convicted of receiving, possessing or transporting a firearm. Subsequently, Congress decided to expand the predicate offenses to include serious drug offenses and violent felonies. The definition of "violent felony" was vigorously debated with two rival bills being introduced. After extensive discussion of the legislative record, the *Sherbondy* court concluded that Congress consistently had discussed subsection (ii) in terms of what precise offenses it would include. The first part of subsection (ii) sets forth specific property offenses that Congress wanted to cover. The second part of subsection (ii), the "otherwise" clause, refers to other unspecified categories of property-related offenses which on their face present a serious potential risk of physical injury. The *Sherbondy* court refused to view the "otherwise" clause as an indication that Congress intended to abandon the categorical approach in favor of one which would require courts to examine individual conduct. The court also noted the difficulties inherent in probing into defendant's conduct at hearings frequently held many years after the event. *Id.*

Thus, the *Sherbondy* court viewed subsections (i) and (ii) as working together. Subsection (i) covered those categories of offenses in which physical force against a person was an element necessarily proved to obtain a conviction. Subsection (ii) broadens the scope of violent felony by including four specific categories of property crime, each of which Congress believed involved conduct posing a serious risk of injury to another person. Through the final "otherwise" provision, subsection (ii) intended to reach other property related statutory and common law offenses not covered by subsection (i) but which necessarily involve a similarly serious risk. 865 F.2d at 1008–09.

The *Sherbondy* court as well as the court in *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988), pointed out that a court, when faced with an ambiguous statute and limited guidance from legislative history, must resolve the ambiguity in favor of the accused. If the language of a penal statute admits of more than one interpretation, courts should chose the least harsh construction, the one least likely to impose penalties Congress did not intend. *See, U.S. v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), cited in *Sherbondy*, 865 F.2d 996 at 1009.

The Government's argument simply fails to go to the substance of the statute; because of the superficiality of its argument, the Government in effect concedes that Petitioner is correct. The only other argument raised by the Government is that Petitioner has waived this argument because he failed to raise it on appeal. Generally, this failure would bar Petitioner from raising the issues here unless he can show both cause and prejudice resulting from the procedural default. *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988).

■ Petitioner has asserted that the cause for default was ineffective assistance of counsel. His complaint stems from his counsel's advice to stipulate to three prior convictions for violent felonies. Petitioner complains that a lawyer who fails to investigate the law relevant to his client's case cannot provide the constitutionally prescribed minimal level of assistance. That is certainly true in general sense. However, both cases relied upon by the Petitioner in this habeas corpus action were decided by courts in 1988 (*Sherbondy* in December 1988, *Headspeth* in July of 1988). Petitioner was convicted in October of 1987 and sentenced in February of 1988. Access to these various circuit court opinions was unavailable at the time of his sentencing and appeal.

Thus, counsel's failure to raise these issues was not outside the range of reasonable attorney conduct and cannot form the basis for a claim of ineffective assistance.

■ However, "cause" other than ineffective assistance is presented here. In *Ross v. Reed*, 704 F.2d 705 (4th Cir.1983), aff'd 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the court found the "cause" prong to be satisfied because the legal question at issue was novel and counsel had no reasonable basis for asserting it on appeal.

The same situation existed here. The cases casting doubt on the meaning of the statute were not decided until late in 1988, well after Mr. Lowe's sentencing and appeal. As the Fourth Circuit said,

> [C]ounsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar.

*Reed,* 468 U.S. at 15, 104 S.Ct. at 2910.

The issue presented here is slightly different from the one in *Reed,* since this Petitioner's conviction was for a federal, not a state violation. However, the underlying theories of procedural default and/or waiver all stem from a concern over abuse of the court system by Defendants who deliberately bypass available venues of review for tactical reasons. That concern is simply not presented in a situation such as this one.

Thus, the Court holds that Petitioner has established cause. The prejudice is evident. Lowe is presently serving a much longer sentence than he would be if the enhancement statute had not been applied.

Accordingly, it is ordered that the Petitioner's Motion to Correct his sentence is granted. The Clerk is directed to schedule a new sentencing hearing, at which time the Court will vacate the present sentence and impose a corrected sentence. The Clerk is further ordered to issue all appropriate writs. Petitioner's Motion for Appointment of Counsel is also granted.