**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BORIS EDEMBER DELGADO-
HERNANDEZ,
                    *Petitioner,*

            v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 08-70789

Agency No.
A029-273-534

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 2, 2012*
Seattle, Washington

Filed October 9, 2012

Before: Michael Daly Hawkins, M. Margaret McKeown and
Jay S. Bybee, Circuit Judges.

Per Curiam Opinion

───────────────

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Jaime Jasso, LAW OFFICE OF JAIME JASSO, Westlake Village, California, and Robert B. Jobe, Anna L. Benvenue LAW OFFICE OF ROBERT B. JOBE, San Francisco, California, for the petitioner.

Tony West, Assistant Attorney General, Donald E. Keener, Deputy Director, and Robert M. Markle, Attorney, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

PER CURIAM:

Boris Edember Delgado-Hernandez ("Delgado") seeks review of a final order of removal following the Board of Immigration Appeals' ("BIA") determination that his conviction for attempted kidnapping under California Penal Code § 207(a) is an aggravated felony because it is categorically a crime of violence.[1] We deny the petition because an ordinary case of kidnapping under this statute presents a substantial risk of force, and therefore § 207(a) defines a crime of violence.

### BACKGROUND

Delgado, a citizen of El Salvador, was lawfully admitted to the United States on July 23, 2001, and became a lawful permanent resident in 2003. He pled guilty to the attempted kidnapping of his cousin on April 12, 2006 under California Penal Code § 207(a), and was sentenced to eighteen months in prison. The Department of Homeland Security initiated removal proceedings against Delgado in September of 2006, charging him as removable under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). The Immigration Judge found that attempted kidnapping under § 207(a) was an aggravated felony. Delgado timely appealed, and the BIA affirmed the decision in an unpublished opinion.

---

[1]Delgado also appealed the BIA's determination that he is ineligible for withholding of removal, asylum, and Convention Against Torture relief because he committed a particularly serious crime. Delgado waived these claims because they were not properly briefed. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004) ("Issues not raised in an appellant's opening brief are typically deemed waived.").

We have jurisdiction under 8 U.S.C. § 1252(a)(1), which provides for judicial review of final orders of removal, and under 8 U.S.C. § 1252(a)(2)(D), which provides for judicial review of constitutional and legal questions raised by petitioners found removable based on criminal activity. "[W]e review *de novo* the BIA's determination of questions of law, except to the extent that deference is owed to its interpretation of the governing statutes and regulations." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011 (9th Cir. 2006). Because the BIA resolved this appeal in an unpublished decision, we defer to its interpretation of the INA only to the extent we find it persuasive. *See id.* at 1014-15.

## ANALYSIS

**[1]** The sole issue on appeal is whether Delgado's conviction for attempted kidnapping is a crime of violence, thus making him removable as an aggravated felon. An "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F) means "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." Delgado's challenge to the BIA's determination turns on the definition of "crime of violence" in 18 U.S.C. § 16:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Under 8 U.S.C. § 1101(a)(43)(U), attempts to commit an aggravated felony are treated as if they are completed commissions of the aggravated felony. Delgado does not dispute that his conviction under § 207(a) carries a term of imprison-

ment of at least one year, but he argues that it does not qualify as a crime of violence.

The government has at its disposal three possible ways to demonstrate that § 207(a) defines a crime of violence. Under the categorical approach, it may show that the crime has a force element under § 16(a). Alternatively, it may show that § 207(a) categorically involves a substantial risk of force under § 16(b). Finally, under the modified categorical approach, it may bring forth the judicially noticeable documents in Delgado's conviction to show that his particular crime was a crime of violence under § 16(a) or § 16(b). Although § 207(a) does not include a force element under § 16(a), an ordinary kidnapping under § 207(a) presents a substantial risk of force, thereby categorically triggering § 16(b). Because § 207(a) is categorically a crime of violence, we need not rely on the modified categorical analysis.

## A.   Force Element under § 16(a)

**[2]** In determining whether an offense qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), we apply the "categorical approach" to determine whether the "full range of conduct covered by" the relevant state criminal statute "falls within the meaning of" a crime of violence under 18 U.S.C. § 16. *Penuliar v. Mukasey*, 528 F.3d 603, 609 (9th Cir. 2008) (internal quotation marks omitted). Subsection § 207(a) provides:

> Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping.

**[3]** Our analysis on this point begins and ends with the plain text of the statute. Because kidnapping under § 207(a) can be committed by "any means of instilling fear" instead of

by force, § 207(a) does not include "the use . . . of physical force" as an element of the crime. 18 U.S.C. § 16(a). *See United States v. Sherbondy*, 865 F.2d 996, 1009 (9th Cir. 1988) (holding that kidnapping under the Model Penal Code does not qualify as a crime of violence under a provision analogous to 18 U.S.C. § 16(a) because it may be achieved through trickery or deceit rather than force). As a result, the "force" element of § 207(a) does not categorically qualify the kidnapping as defined by the statute as a crime of violence under 18 U.S.C. § 16(a).

**B. SUBSTANTIAL RISK OF FORCE UNDER § 16(B)**

**[4]** The analysis under 18 U.S.C. § 16(b), whether § 207(a) "involves a substantial risk that physical force . . . may be used" and thus qualifies as a crime of violence, is not as straightforward as that under § 16(a). Because we must evaluate gradations of risk, which is an "inherently probabilistic concept[ ]," unlike in our analysis of § 16(a), the language of § 207(a) is not decisive on its face. *James v. United States*, 550 U.S. 192, 207 (2007).[2] Nevertheless, we previously held that kidnapping by force or fraud under § 207(d) presents a serious risk of physical injury. *United States v. Lonczak*, 993 F.2d 180, 183 (9th Cir. 1993). Our sister circuits have also

---

[2]Although the text of § 207 in the *abstract* may implicate situations where no force in the generic sense is used, we must assess *concrete* and *actual* risk that force may be used. Therefore our holding in *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc) is inapposite to the § 16(b) analysis. There, we explained that "when the state statute's greater breadth is evident from its text, a defendant may rely on the statutory language to establish the statute as overly inclusive," and it is "the Government [that] present[s] . . . affirmative proof that [a state] court has expressly limited [the state statute] so as to preclude its application." *Id.* at 82-83. However, *Vidal*, like our analysis of § 16(a), simply required a more straightforward decision—whether or not the offense satisfied the generic definition. Our decision here is less black and white: we must independently consider the *risk* that the generic factors are satisfied, which in turn, requires us to consider only the "ordinary case." *James*, 550 U.S. at 207-08.

treated similar kidnapping statutes as presenting a substantial risk of force. We conclude again that kidnapping under § 207 is a crime of violence under § 16(b).

Before diving into the commentary on kidnapping statutes, we step back to consider first principles, especially the evaluation of risk in crime of violence statutes. Under the categorical approach, we consider whether the elements of § 207(a) constitute a crime of violence, as defined by § 16(b), that is, whether they present a substantial risk of force. *See Shepard v. United States*, 544 U.S. 13, 17 (2005). In evaluating "substantial risk" as we parse the force and fear elements of kidnapping in § 207(a), we inquire whether "the conduct encompassed by the elements of the offense, in the ordinary case, presents" such a risk. *See James*, 550 U.S. at 208. The "risk of physical confrontation with a property owner, law enforcement official, or other third party" in attempting burglary, for example, presents a sufficient probability of injury under the statute to qualify burglary as a crime of violence. *Id.* at 213.[3]

Our approach in *Lonczak* strongly suggests that in the ordinary case the force or fear contemplated in § 207(a) presents a serious risk of force. 993 F.2d at 183. In *Lonczak*, we held that Cal. Pen. Code § 207(d), which criminalized kidnapping as "tak[ing] by force or fraud," constitutes a crime of violence

---

[3]*Valencia* v. *Gonzales*, 439 F.3d 1046 (9th Cir. 2006), is not in conflict with the approach outlined in *James*. *Valencia* considered whether California's statutory rape provision, Cal. Penal Code § 261.5, was a crime of violence under section 16(b). *Id.* at 1049. The court held that statutory rape "does not, by its nature, involve a substantial risk of the use of physical force to commit the offense." *Id.* at 1053. That is because statutory rape—unlike sexual battery—involves the victim's legal incapacity to consent rather than the victim's actual nonconsent. *Id.* at 1050-51. "[L]ack of actual consent, rather than legal incapacity to consent, is the 'touchstone' of § 16(b) analysis . . . ." *Id.* at 1051. In other words, the "ordinary case" of statutory rape can include actual, but not legal, consent, and therefore doesn't entail a risk of force. By contrast, the "ordinary case" of kidnapping does entail such a risk.

for the purposes of then-U.S.S.G. § 4B1.2(l)(ii) as it "present[s] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(l) cmt. n.2. 993 F.2d at 183.

To an extent, *Lonczak* has been overtaken by developments in the following decade. In 2002, the California Supreme Court declared that "the only force required to kidnap an unresisting infant or child is the amount necessary to move the victim a substantial distance." *In re Michele D*, 59 P.3d 164, 172 (Cal. 2002) (holding a minor defendant guilty of kidnapping for leaving a store with a friend's infant child). The next year, the California Legislature added section 207(e) to the penal code to codify the standard articulated in *Michele D*. *See* 2003 Cal. Legis. Serv. 209 (West). The result is that the requirement of an element of force is "relaxed or eliminated in a kidnapping that involves an infant or small child" in California under § 207. *Michele D*, 59 P.3d at 169. Subsection 207(e)'s adoption of this non-"conventionally understood" meaning of force after *Lonczak*, *id.*, raises a question as to whether the force that is possible in a kidnapping under § 207 rises to the level of force contemplated in § 16(b).[4] In other words, merely picking up and carrying away an infant, without any other conflict, does not entail a substantial risk of force as the term is used in § 16.

---

[4]Another potential distinction between *Lonczak* and this case is that the crime of violence guideline in *Lonczak* concerns the risk of *injury* whereas the statute at issue here concerns only the risk of *force*. As the Supreme Court has noted, "§ 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct. The 'substantial risk' in § 16(b) relates to the use of force, not to the possible [injurious] effect of a person's conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 10 n.7 (2004); *see also Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1084 (9th Cir. 2007) ("[M]ere harm to the victim is not sufficient under § 16(b); the statute requires use of force against the victim in the course of committing the crime."). However, the federal cases discussed below all concern crime of violence statutes that rely on proving a risk of force rather than of injury. Therefore, this distinction is not relevant.

However, the addition of § 207(e) changes little in our analysis because it does not describe an ordinary case of kidnapping; rather it merely sets a lower *limit* on the force required. Just as the Supreme Court in *James* was able to imagine a burglary without the possibility of injury, involving "an unoccupied structure located far off the beaten path and away from any potential intervenors," we too may imagine a non-custodial parent who refuses to return with her children from a vacation abroad, thereby effectuating a kidnapping under § 207, with minimal risk of force. *James*, 550 U.S. at 207. However, we cannot adopt a Pollyannaish outlook at the margins of the statute; the evidence before us is that the *ordinary* case of kidnapping involves a risk of violence.

*Michele D.* itself involved such a risk, when a "disturbed, emotionally hurt, and tearful" 15-year old, who had recently suffered a miscarriage, absconded with an infant temporarily in her charge, was accosted by a third party trespassing "in a dark alleyway," and was turned over to the police soon after. 59 P.3d at 166-67. No force was actually involved—but force remained a substantial risk from the emotionally distraught minor. Similarly, the kidnapping cases upon which *Michele D.* relies, some decided pre-*Lonczak*, involved a substantial risk of force, and sometimes, actual force. *See People v. Hill*, 3 P.3d 898, 899 (Cal. 2000) (car jacking involving rape of mother); *Parnell v. Superior Court of Alameda Cnty.*, 173 Cal. Rptr. 906, 912 (Cal. App. 1981) ("One cannot imagine a more threatening situation: A seven-year-old youngster in a moving automobile under the control of two adult strangers who twice countermanded the child's request to contact his parents."); *People v. Oliver*, 361 P.2d 593, 594 (Cal. 1961) (defendant "subdued" by officers "after a struggle"). In considering an attenuated force requirement, *Michele D.* and § 207(e) focus on the actual use of force upon the victim; as in *James*, we also consider the *risk* of force against the victim and third parties. *See also United States v. Hennecke*, 590 F.3d 619, 623 (8th Cir. 2010) ("Physically stealing from a person poses the same risk of violent confrontation with the

victim or a third person as attempted or completed burglary."); *United States v. Rodriguez*, 659 F.3d 117, 119 (1st Cir. 2011) (same).

**[5]** The approach of other courts with respect to comparable kidnapping statutes—specifically the federal kidnapping statute—also lends support to our conclusion that kidnapping by force or fear ordinarily involves a risk of violence. The federal kidnapping statute has no force requirement, and provides merely that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof" shall be punished in accordance with the law. 18 U.S.C. § 1201(a). Nonetheless, the Supreme Court has seen fit to assume, admittedly without deciding, that this constitutes a crime that presents a substantial risk of force. In *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999), the Court considered a venue provision controlled by 18 U.S.C. § 924(c)(1), which prohibits using or carrying a firearm during and in relation to a crime of violence. The Court explained that the fact that the firearm was carried only in one state did not preclude trying the defendant in another state where the defendant had committed the underlying crime of violence. The Court throughout characterized kidnapping under the federal statute as a crime of violence, under a definition identical to § 16. 18 U.S.C. § 924(c)(3). *See id.* at 280 (the underlying crime constitutes the "commi[ssion] [of] all the acts necessary to be subject to punishment for kidnaping (a crime of violence).").

Admittedly, *Rodriguez-Moreno* did not squarely hold that federal kidnapping is a crime of violence. *But see United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly, we do not blandly shrug them off because they were not a holding.") (internal quotation marks omitted). However, our sister circuits have been more defini-

tive in considering the federal kidnapping statute. *United States v. Patino*, 962 F.2d 263, 264, 267 (2d Cir. 1992) ("That the crime of kidnapping involves the threatened use of physical force against a person and is thus a crime of violence under this statute cannot be questioned."); *United States v. Salemi*, 26 F.3d 1084, 1087 (11th Cir. 1994) (babysitting house guest steals infant without force, but court stated that "[k]idnapping is a violent crime" because "[t]he Commission recognized that kidnapping inherently involves the threat of violence"). Similarly, interpreting a state statute that resembles the federal statute, the Sixth Circuit held that kidnapping under Ohio Code § 2905.01 is a crime of violence under the Armed Career Criminal Act. *United States v. Kaplansky*, 42 F.3d 320, 324-25 (6th Cir. 1994). *Kaplansky* relied on our decisions in *Lonczak* and *Sherbondy*, and reasoned that

> the essence of kidnapping is requiring another to do something against his or her will; and because physical force or restraint is usually the best way to overbear the will of another, physical force or threat of force is a latent, but more often actual, companion of the coercive element. That deception may be used to effect the kidnapping does not erase the ever-present possibility that the victim may figure out what's really going on and decide to resist, in turn requiring the perpetrator to resort to actual physical restraint if he is to carry out the criminal plan.

*Id.* at 324. The same reasoning applies here to kidnapping by force or fear under § 207(a).

**[6]** Finally, legislative bodies, including Congress, have consistently treated kidnapping as a crime of violence. Although these bodies did not necessarily have in mind a definition of a "crime of violence" as involving a "substantial risk of force," we find it instructive that historically, "kidnapping" has always been an enumerated violent crime. This history is part of the common-sense understanding of kidnapping. In

1926, as part of an effort to regulate firearms after World War I, the National Conference of Commissioners on Uniform State Laws promulgated the Uniform Firearms Act ("UFA"), which, among other things, outlawed gun ownership for persons convicted of a "crime of violence." *See* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 700-01 (2009). In 1930, the drafters promulgated another version of the act which defined "crime of violence" as an enumerated list of (largely) common law crimes: "murder, manslaughter, rape, mayhem, assault to do great bodily harm, robbery, burglary [housebreaking, breaking and entering, kidnapping, and larceny]."[5] National Conference of Commissioners on Uniform State Laws, Uniform Firearms Act 3 (1930) (brackets in original). That is, the UFA defined the term "crime of violence" "to cover such crimes as are ordinarily committed with the aid of firearms." Note, The Uniform Firearms Act, 18 Va. L. Rev. 904, 906 n.11 (1932). By 1938, the Conference reported that 10 states had already adopted the UFA. Note, *Firearms: Problems of Control*, 80 Harv. L. Rev. 1328, 1337 n.60 (1967); *see, e.g.*, Act of June 11, 1931, § 1, 1931 Pa. Laws 497, 497 ("'Crime of violence,' as used in this act, means any of the following crimes, or an attempt to commit any of the same, namely: murder, rape, mayhem, aggravated assault and battery, assault with intent to kill, robbery, burglary, breaking and entering with intent to commit a felony, and kidnapping").

That same year, Congress adopted the Federal Firearms Act, the first federal effort to prevent felons from possessing firearms. Following the conventions recommended by the National Conference of Commissioners on Uniform State Laws, the prohibition applied only to felons convicted of a "crime of violence," Federal Firearms Act, ch. 850, § 2(f), 52 Stat. 1250, 1251 (1938), which the Act defined as "murder,

---

[5]States were advised to include the various crimes in brackets, including kidnapping, "to suit local definitions." National Conference of Commissioners on Uniform State Laws, Uniform Firearms Act 3 n.1 (1930).

manslaughter, rape, mayhem, kidnaping, burglary, house-breaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year," *id.* § 1(6), 52 Stat. at 1250. Congress subsequently amended federal law to prohibit the possession of a firearm by any felon regardless of the offense of conviction. *See* Act of October 3, 1961, Pub. L. No. 87-342, 75 Stat. 757; *see also* 18 U.S.C. § 922(g)(1).

Although the original definition of kidnapping is no longer found in the U.S. Code, the understanding clearly survives in federal law. For one, Congress continues to view kidnapping as a crime of violence. In enacting "[m]andatory minimum terms of imprisonment for violent crimes against children," Congress provided that "if the *crime of violence* is *kidnapping* (as defined in [18 U.S.C. § ] 1201)," the mandatory minimum is 25 years. 18 U.S.C. § 3559(f)(2) (emphasis added).[6] Similarly, the Sentencing Commission has retained the same definition. In the Guidelines pertaining to illegal reentry offenders and offenders under the Armed Career Criminal Act, the Sentencing Commission has defined "crime of violence" to include a list of enumerated offenses, and kidnapping is among them. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) ("'Crime of violence' means any of the following offenses under federal, state, or local law: . . . kidnapping . . . or any other offense

---

[6]The legislative history of 18 U.S.C. § 16 also sheds light on the definition of kidnapping. The Judiciary Committee report accompanying that law explained that the crime of violence "definition is taken from S. 1630 as reported in the 97th Congress." S. Rep. No. 98-225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486 (citing S. Rep. No. 97-307). In turn, that earlier report unequivocally stated that "the Committee considers kidnapping to be a 'crime of violence' under section 204(a)," which provided for extraterritorial jurisdiction over certain crimes of violence. S. Rep. No. 97-307, at 609 (1981); *cf.* S. Rep. No. 106-254, at 28 (2000) (proposing to extend legislation "broadly to all victims of a 'crime of violence,' " and defining "[c]rime[ ] of violence [to] include all forms of . . . kidnaping").

. . . that has as an element the use, attempted use, or threatened use of physical force against the person of another."); *id.* § 4B1.2 cmt. n.1 ("'Crime of violence' includes . . . kidnapping . . . .").

The definition also persists through a wide variety of contexts in statutes across a large array of jurisdictions. Twenty states, the District of Columbia, and the Virgin Islands all define, at some point in their respective codes, "crime of violence" to include kidnapping. *See* Ala. Code § 13A-11-70(2) (offenses relating to firearms and weapons); Ark. Code Ann. § 5-73-202(1)(C) (uniform machine gun act); Colo. Rev. Stat. § 16-1-104(8.5)(a)(I) (general definitions); Conn. Gen. Stat. § 53-202(a)(2) (use of a machine gun during a crime of violence); Del. Code Ann. tit. 16, § 6647(b)(2)(a) (membership requirements for volunteer firefighters); D.C. Code §§ 22-4501(1), 23-1331(4) (weapons offenses); 20 Ill. Comp. Stat. 301/1-10 (alcohol and drug abuse dependency act); Ind. Code § 35-50-1-2(a)(7) (consecutive or concurrent terms of sentence); La. Rev. Stat. Ann. § 14:2(B)(15)-(17) (general definitions); Md. Code Ann., Pub. Safety § 5-101(c)(7) (definitions relating to firearms offenses); Minn. Stat. Ann. § 624.712(5) (general definitions); N.D. Cent. Code § 12-44.1-31(2)(c) (requirements for accepting out-of-state inmates); Or. Rev. Stat. § 475.908(3)(b)(E)-(F) (causing another person to ingest a controlled substance for the purpose of committing a crime of violence); 18 Pa. Cons. Stat. Ann. § 4416(b) (offenses involving carrying deadly weapons); R.I. Gen. Laws § 11-47-2(2) (definitions relating to weapons offenses); S.C. Code Ann. § 16-23-10(3) (offenses involving weapons); S.D. Codified Laws § 22-1-2(9) (general definitions); Tenn. Code Ann. § 39-17-1301(3) (offenses against public health, safety, and welfare); Vt. Stat. Ann. tit. 13, § 11a(d)(7) (provisions for violent career criminals); Va. Code Ann. § 18.2-288(2) (uniform machine gun act); Wash. Rev. Code Ann. § 9.41.010(3)(a) (definitions relating to firearms and dangerous weapons offenses); V.I. Code Ann. tit. 19, § 451(e) (control of firearms and ammunition).

Eighteen more states define kidnapping, or refer to it in such a way, as to make clear that the jurisdiction considers the offense to be a violent crime. *See* Alaska Stat. § 11.56.765(a)(1)(B) (characterizing "kidnapping or attempted kidnapping of a child" as a "violent crime"); Ariz. Rev. Stat. § 13-706(2)(h) (defining "violent or aggravated felony"); Cal. Penal Code § 667.5(c)(14) (defining "violent felony"); Del. Code Ann. tit. 11, § 4201(c) (defining "violent felonies"); Fla. Stat. § 775.084(1)(b)(1)(d) (defining "[h]abitual violent felony offender"); Ga. Code Ann. § 17-10-6.1(a)(3) (defining "serious violent felony"); Haw. Rev. Stat. § 351-32(11) (including the term in a list under the heading "[v]iolent crimes"); Kan. Stat. Ann. § 22-4902(e)(F)-(G) (defining "[v]iolent offender"); Ky. Rev. Stat. Ann. § 532.200(3) (defining "[v]iolent felony offense"); Mass. Gen. Laws Ann. ch. 127, § 133E (defining "violent crime"); Mo. Rev. Stat. § 563.011(3) (defining "[f]orcible felony" or "any felony involving the use or threat of physical force or violence against any individual"); Mont. Code Ann. § 46-18-1001(5) (defining "[v]iolent felony offense"); Neb. Rev. Stat. § 83-961(8) (defining "[v]iolent offense"); Nev. Rev. Stat. § 202.876(3) (defining "[v]iolent or sexual offense"); N.M. Stat. Ann. § 30-3-14(A) (defining "violent felony"); N.Y. Penal Law § 70.02(1)(a) (defining "violent felony offenses"); N.C. Gen. Stat. §§ 14-7.7(b), 14-39(b) (defining "violent felony"); Okla. Stat. tit. 22, § 982(F)(10) (defining "violent felony offense"); Utah Code Ann. § 76-3-203.5(1)(c)(O) (defining "[v]iolent felony"); Wyo. Stat. Ann. § 6-1-104(a)(xii) (defining "[v]iolent felony").

**[7]** In sum, numerous courts have held that kidnapping generally presents a risk of substantial force. Congress, the Sentencing Commission, and forty jurisdictions have concluded, consistent with historical practice, that kidnapping is a violent crime. Based on all the available evidence, the government sufficiently met its burden of showing that an ordinary kidnapping under § 207(a) is a crime of violence because it results in a substantial risk of force. The BIA did not err in

its rejection of Delgado's challenge to the final order of removal.

**PETITION DENIED.**