OPINION
PER CURIAM:
Tavares Chandler pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court concluded that Chandler had been convicted of three “violent felonies,” as defined by the Armed Career Criminal Act (ACCA), and sentenced Chandler to a term of 235 months’ imprisonment. Chandler does not contest his extensive criminal history, but he contends that the district court erred in concluding that he had been convicted of three violent felonies. Because we conclude that all three prior convictions are violent felonies únder the ACCA, we affirm.
I. FACTS AND PROCEDURAL HISTORY
Chandler was indicted in 2010 for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). Chandler pleaded guilty to the indictment without the benefit of a plea agreement. Chandler had previously been convicted in Nevada state court of the offenses of (1) second degree kidnapping, Nev.Rev.Stat. §§' 200.310, 200.330; (2) coercion, Nev.Rev. Stat. § 207.190; and (3) conspiracy to commit robbery, Nev.Rev.Stat. §§ 199.480, 200.380. The government sought an increased penalty under the ACCA, arguing that Chandler’s Nevada state convictions qualified as violent felonies. See 18 U.S.C. § 924(e)(1). Chandler objected, arguing that neither his conspiracy conviction nor his kidnapping conviction was a violent *650 felony as defined by the ACCA. He did not" dispute that his conviction for coercion qualified as a violent felony. Over Chandler’s objection, the district court determined that Chandler’s three Nevada state convictions were all violent felonies under the ACCA and sentenced Chandler to 235-months’ imprisonment. Chandler timely appealed.
“We review de novo whether a prior conviction is a predicate felony under the ACCA.” United States v. Grisel, 488 F.3d 844, 846 (9th Cir.2007) (en banc).
II. DISCUSSION
Under 18 U.S.C. § 924(e)(1), any “person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, ... shall be imprisoned not less than fifteen years.” For purposes of this subsection of the ACCA, a violent felony is “any crime punishable by imprisonment for a term exceeding one year ... [that] is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii).
Notably, a violent felony as defined in the ACCA is nearly identical to a “crime of violence” as defined in the Sentencing Guidelines’ Career Offender enhancement.[1] Compare 18 U.S.C. § 924(e)(2)(B)(ii) with U.S. Sentencing Guidelines .Manual § 4B1.2(a) (providing that a crime of violence is (1) “any offense ... punishable by imprisonment for a term exceeding one year, that ... is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another”). Because there is no meaningful distinction between the definitions, we have used our analysis of the definition of crime of violence in the Sentencing Guidelines to guide our interpretation of violent felony in the ACCA. See United States v. Spencer, 724 F.3d 1133, 1138 (9th Cir.2013); United States v. Crews, 621 F.3d 849, 852 n. 4 (9th Cir.2010); United States v. Melton, 344 F.3d 1021, 1027 (9th Cir.2003).
In United States v. Park, 649 F.3d 1175 (9th Cir.2011), we established a framework for analyzing whether a conviction under state law is a conviction for a crime of violence. “First, the ‘conduct encompassed by the elements of the offense, in the ordinary case,’ must ‘present[ ] a serious potential risk of physical injury to another.’ ” Id. at 1177-78 (alteration in original) (quoting James v. United States, 550 U.S. 192, 208, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007)). “Second, the state offense must be ‘roughly similar, in kind as well as in degree of risk posed’ to those offenses enumerated at the beginning of the residual clause — burglary of a dwelling, arson, extortion, and crimes involving explosives.” Id. at 1178 (quoting Begay v. United States, 553 U.S. 137, 143, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008)). As we recently observed:
The inquiry under Park’s first prong is straightforward. But the second requirement — whether the state offense is “ ‘roughly similar, in kind as well as in degree of risk posed’ to those offenses enumerated at the beginning of the residual clause” — is more complicated, and *651 must be addressed in light of the Supreme Court’s quartet of ACCA cases.
Spencer, 724 F.3d at 1138 (internal citation omitted) (quoting Park, 649 F.3d at 1178).
In James, the Supreme Court held that the second requirement should focus on whether the risk posed by the state offense “is comparable to that posed by its closest analog among the enumerated offenses.” James, 550 U.S. at 203, 127 S.Ct. 1586. In Begay, however, the Court concluded that a state conviction for driving under the influence was not categorically a violent felony under the ACCA because it did not “involve purposeful, violent, and aggressive conduct.” Begay, 553 U.S. at 144-45, 128 S.Ct. 1581 (internal quotation marks omitted); see also Chambers v. United States, 555 U.S. 122, 128, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (applying Begay ’s “purposeful, violent, and aggressive conduct” formula). In its most recent ACCA opinion, the Court once again focused on the level of risk posed by the state offense at issue compared with the level of risk posed by the enumerated offenses. See Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 2275, 180 L.Ed.2d 60 (2011) (“In general, levels of risk divide crimes that qualify from those that do not”).
We concluded in Spencer that Sykes meant that Begay ’s “ ‘purposeful, violent, and aggressive formulation’ is only disposi-tive in cases involving a strict' liability, negligence, or recklessness offense” — such as driving under the influence — and does not apply to intentional crimes. Spencer, 724 F.3d at 1139; see also Sykes, 131 S.Ct. at 2276 (“Begay involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict liability, negligence, or recklessness crime.”). Many of our sister circuits have interpreted Sykes similarly. See, e.g., Harrington v. United States, 689 F.3d 124,135 (2d Cir.2012) (“In Sykes, the Court clarified that in cases involving intentional criminal conduct, the focus of judicial inquiry should remain on the risk assessment specified in the ACCA’s text, i.e., whether the proscribed conduct presents ‘a serious potential risk of physical injury- to another’ comparable to that posed by the enumerated offenses.” (quoting- 18 U.S.C. § 924(e)(2)(B)(ii))); United States v. Chitwood, 676 F.3d 971, 979 (11th Cir.2012) (“Sykes makes clear that Begay’s ‘purposeful, violent, and aggressive’ analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes.”); United States v. Bartel, 698 F.3d 658, 662 (8th Cir.2012); United States v. Meeks, 664 F.3d 1067, 1070 (6th Cir.2012); United States v. Smith, 652 F.3d 1244, 1248 (10th Cir.2011); United States v. Rodriguez, 659 F.3d 117, 119 (1st Cir.2011).
Here, neither conspiracy to commit robbery nor second degree kidnapping is a strict liability crime or offense that punishes reckless or negligent behavior. See Doyle v. State, 112 Nev. 879, 921 P.2d 901, 911 (1996) (overruled on other grounds by Kaczmarek v. State, 120 Nev. 314, 91 P.3d 16 (2004)) (“A person who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator; however, ‘[m]ere knowledge or approval of, or acquiescence in, the object and purpose of a conspiracy without an agreement to cooperate in achieving such object or purpose does not make one a party to conspiracy.’ ” (alteration in original) (emphasis added) (quoting State v. Arredondo, 155 Ariz. 314, 746 P.2d 484, 487 (1987))); Nev. Rev.Stat. § 200.310(2) (“A person who willfully and without authority of law seizes, inveigles, takes, carries away, or *652 kidnaps another person with the intent to keep the person secretly imprisoned ... is guilty of kidnapping in the second degree.” (emphasis added)). As a result, we apply the “closest analog test” set forth in James. See Spencer, 724 F.3d at 1140.
With this framework in mind, we turn to Chandler’s prior convictions.
A. Conspiracy to Commit Robbery
We have not previously considered whether conspiracy to commit robbery is a violent felony.[2] We have, however, determined that conspiracy to interfere with interstate commerce by robbery is a crime of violence for purposes of the firearm sentencing enhancement in 18 U.S.C. § 924(c)(1).[3] See United States v. Mendez, 992 F.2d 1488, 1489 (9th Cir.1993). In Mendez, we explained that a conspiracy “ ‘increases the chances that the planned crime will be committed’ ” because a conspiracy “ ‘provides a focal point for collective criminal action.’ ” Id. at 1491 (quoting United States v. Chimurenga, 760 F.2d 400, 404 (2d Cir.1985)). Due to this heightened risk of harm, a “conspiracy to commit a crime of violence is a ‘crime of violence’ under the substantial risk definition of § 924(c)(3)(B) or its equivalent.”[4] Id. at 1492. In other words, “conspiracy to rob in violation of [the Hobbs Act] ‘by its nature, involves a substantial risk that physical force ... may. be used in the course of committing the offense,’ ” and is thus a crime of violence. Mendez, 992 F.2d at 1491 (quoting 18 U.S.C. § 924(c)(3)(B)). Cognizant of this binding precedent,[5] we consider whether conspiracy to commit robbery under Nevada law is *653 a “violent felony” as that term is defined in § 924(e) (2) (B) (ii).
1. Serious potential risk of injury
The first question under Park is whether the conduct encompassed by the elements of conspiracy to commit robbery under Nevada law ordinarily “present[ ] a serious potential risk' of physical injury to another.” Park, 649 F.3d at 1177-78 (quoting James, 550 U.S. at 208, 127 S.Ct. 1586) (brackets in the original). Because Mendez established that conspiracy to commit robbery “categorically creates a substantial risk that physical force may be used,” Mendez, 992 F.2d at 1492, we must answer in the affirmative.
Admittedly, Mendez differs from 'this case in two respects. First, Mendez involved conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, whereas here, Chandler was convicted of conspiracy to commit robbery in violation of Nev.Rev.Stat. §§ 199.480, 200.380. The Hobbs Act penalizes “[w]ho-ever in any way or degree obstructs, delays or affects commerce ... by robbery ... or conspires so to do.” 18 U.S.C. § 1951(a). The Act then defines robbery as “the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence.” 18 U.S.C. § 1951(b)(1). And conspiracy under federal law occurs “[i]f two or more persons conspire [ ] to commit any offense against the United States.” 18 U.S.C. § 371; see also United States v. Feola, 420 U.S. 671, 692, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975) (“[T]he essence of conspiracy is agreement.”).
Nevada also defines conspiracy as “an agreement between two or more ‘persons for an unlawful purpose.” Nunnery v. Eighth Judicial Disk Court ex rel. Cnty. of Clark, 124 Nev. 477, 186 P.3d 886, 888 (2008) (per curiam) (internal quotation marks omitted); see also Nev.Rev.Stat. § 199.480(1). And, under Nevada law, robbery is “the unlawful taking of personal property from the person of another, or in the person’s presence, against his or her will, by means of force or violence or fear of injury.” -Nev.Rev.Stat. § 200.380(1).
Thus, federal law and Nevada law both effectively define conspiracy to commit robbery as an agreement between two or more persons to unlawfully take property from another person against his or her will. Because federal law is substantially similar, to Nevada law, the first distinction between-Mendez and this case is insignificant.
Second, Mendez differs from this case because it involved 18 U.S.C. § 924(c)(1), which subjects individuals who use a firearm in the course of a “crime of violence” to an additional five years’ imprisonment. The statute defines a crime of violence as any offense “that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” 18 U.S.C. § 924(c)(3)(B). By contrast, Chandler appeals a sentencing enhancement under 18 U.S.C. § 924(e)(2)(B)(ii), which subjects individuals who have three previous convictions for “violent felonies” to a minimum of fifteen-years imprisonment. A violent felony is an offense that “is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” Id.
Both statutes are similar because they apply to crimes that involve a serious or substantial risk that physical force will occur during the course of the offense. The major difference between these two statutes is that the ACCA only applies to seriously dangerous crimes that are simi *654 lar to the enumerated offenses, whereas 18 U.S.C. § 924(c)(1) applies to all" substantially dangerous- offenses. In light of this difference, Mendez is not helpful when analyzing the second prong of the Park framework. Nevertheless, because Mendez uses the substantial risk of injury test, which is similar to the serious risk of injury test that we consider here, it still applies to our analysis of the first prong.[6]
Accordingly, despite the differences between Mendez and this case, we are bound by Mendez to conclude that “conspiracy to rob ... ‘by its nature, involves a substantial risk that physical force ... may be used in the course of committing the offense.’ ” Mendez, 992 F.2d at 1491 (quoting 18 U.S.C. § 924(c)(3)(B)); see also United States v. Gore, 636 F.3d 728, 738 ,(6th Cir.2011) (“An agreement to commit aggravated robbery presents a serious potential risk of injury.”); United States v. Turner, 501 F.3d 59, 67 (1st Cir.2007).
2. Risk of injury roughly similar to the enumerated offenses in the ACCA
Because we previously determined that robbery in Nevada involves a serious risk of physical force, we must now answer the more difficult question: whether conspiracy to commit robbery in Nevada is “‘roughly similar, in kind as well as in degree of risk posed’ to those offenses enumerated at the beginning of the residual clause.” Spencer, 724 F.3d at 1140 (quoting Park, 649 F.3d at 1178). Under Mendez, a conspiracy to'commit a violent crime creates the same risk of harm as the violent crime itself. 992 F.2d at 1492. So, if robbery in Nevada is “roughly similar, in kind as well as in degree of risk posed” to burglary, arson, or extortion, 18 U.S.C. § 924(e)(2)(B)(ii), then conspiracy to commit robbery is also comparable to the enumerated offenses. Here, robbery as defined by Nevada is most similar to extortion and burglary.
The Supreme Court has defined extortion as “obtaining something of value from another with his consent[7] induced by the wrongful use of force, fear, or threats.” Scheidler v. Nat’l Org. for Women, Inc., 537 U.S. 393, 409, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003) (internal quotation marks omitted). We previously determined that a Nevada state conviction for robbery is a crime of violence under the U.S. Sentencing Guidelines because “Nev. Rev.Stat. § 200.380 ... satisfies] the generic definition of extortion.” See United States v. Harris, 572 F.3d 1065, 1065-66 (9th Cir.2009) (per curiam).
Burglary is “an unlawful or unprivileged entry into, or' remaining in, a building or other structure, with intent to commit a crime.” Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The real danger of burglary, like robbery, is “the possibility of a face-to-face confrontation” with the victim or an intervener. James, 550 U.S. at 203, 127 S.Ct. 1586. Indeed, robbery, like burglary, “is dangerous because it can end in confrontation leading to violence.” Sykes, *655 131 S.Ct. at 2273. In fact, the risk posed by robbery may actually be greater than the risk posed by burglary because robbery requires a taking from a person, against his or her will, by means of force or violence or fear of injury, whereas burglary may be completed without any human interaction. See United States v. Davis, 487 F.3d 282, 286 (5th Cir.2007) (“To commit robbery, an individual must interact with the victim in order to cause bodily injury or place the victim in fear of it”).
Accordingly, we conclude that robbery poses risks similar to extortion and burglary. As such, conspiracy to commit robbery in Nevada is also similar, in kind and degree of risk posed, to extortion and burglary. See Gore, 636 F.3d at 741 (“We are satisfied that conspiracy to commit aggravated robbery, in the ordinary case, presents a serious risk of injury similar in kind and degree to the enumerated offenses”).
3. Conclusion
A Nevada conviction for robbery is a violent felony because it creates a serious risk of harm that is comparable to the risk posed by burglary. And because after Mendez, “the § 924(e) analysis of a prior conspiracy conviction is governed by the substantive offense that was the object of the conspiracy,” United States v. Boaz, 558 F.3d 800 (8th Cir.2009), conspiracy to commit robbery, pursuant to Nev.Rev.Stat. §§ 199.480, 200.380, is also a “violent felony” under the ACCA’s residual clause. See also United States v. White, 571 F.3d 365, 370, 372 (4th Cir.2009) (“[T]he essential conduct underlying the Conspiracy Offense is categorically violent ... [and] [t]he Conspiracy Offense cannot be divorced from its violent objective — robbery with a deadly weapon”).
B. Second degree kidnapping
Under Nevada law:
A person who willfully and without authority of law seizes, inveigles, takes, carries away or kidnaps another person with the intent to keep the person secretly imprisoned within the State, or for the purpose of conveying the person out of the State without authority of law, or in any manner held to service or detained against the person’s will, is guilty of kidnapping in the second degree.
Nev.Rev.Stat. § 200.310(2).
We have not previously had the opportunity to consider whether second degree kidnapping under Nevada law is a violent felony. But, in United States v. Williams, 110 F.3d 50 (9th Cir.1997), we determined that second degree kidnapping under Oregon law, Ore.Rev.Stat. § 163.225(l)(a), is a crime of violence as the term is defined in § 4B1.2(a)(2) of the Sentencing Guidelines. Id. at 51-53. And in United States v. Sherbondy, 865 F.2d 996 (9th Cir.1988), we observed that kidnapping as defined by the Model Penal Code “entails a ‘serious potential risk of physical injury’ to the victim, making the offense a ‘violent felony’ under subsection (ii).” Id. at 1009 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Although neither of these cases involved statutes exactly like Nevada’s, we keep these persuasive authorities in mind as we review Chandler’s second degree kidnapping conviction. Once again, we apply the framework that we established in Park, 649 F.3d 1175.
1. Serious risk of harm
Chandler argues that second degree kidnapping as defined by Nevada law can occur in ways that are both violent and nonviolent, particularly because “inveigling” does not require force or restraint. See Bridges v. State, 116 Nev. 752, 6 P.3d 1000, 1009 (2000); Black’s Law Dictionary *656 843 (8th Ed.2004) (inveigle means “to lure or entice through deceit or insincerity”). Accordingly, he contends that we must use the modified categorical approach to determine whether his conviction involved violent conduct. We disagree.
We have determined that kidnapping presents a risk of serious force, even where the kidnapping statute at issue has no force requirement. See Delgado-Hernandez v. Holder, 697 F.3d 1125, 1133 (9th Cir.2012) (considering whether attempted kidnapping is an aggravated felony). In Delgado-Hemandez, we referenced the federal kidnapping statute, 18 U.S.C. § 1201(a), which punishes anyone who “ ‘unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person.’ ” Id. at 1130 (quoting 18 U.S.C. § 1201(a)). We adopted the Sixth Circuit’s reasoning in explaining that:
[T]he essence of kidnapping is requiring another to do something against his or her will; and because physical force or restraint is usually the best way to overbear the will of another, physical force or threat of force is a latent, but more often actual, companion of the coercive element. That deception may be used to effect the kidnapping does not erase the ever-present possibility that the victim may figure out what’s really going on and decide to resist, in turn requiring the perpetrator to resort to actual physical restraint if he is to carry out the criminal plan.
Id. at 1130-31 (quoting United States v. Kaplansky, 42 F.3d 320, 324 (6th Cir.1994)). Additionally, we observed in Delgado-Hemandez that “the Supreme Court has seen fit to assume, admittedly without deciding, that [kidnapping] constitutes a crime that presents a substantial risk of force.” Delgado-Hemandez, 697 F.3d at 1130 (citing United States v. Rodriguez-Moreno, 526 U.S. 275, 280, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999)). And while the Supreme Court’s statement in this regard was dictum, it is nevertheless highly persuasive. See United States v. Montero-Camargo, 208 F.3d 1122, 1132 n. 17 (9th Cir.2000) (“Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what the Court might hold; accordingly, we do not blandly shrug them off because they were not a holding.”).[8]
Of particular importance here, Nevada’s second degree kidnapping statute is very similar to the federal kidnapping statute that we reviewed in Delgado-Hernandez. Compare Nev.Rev.Stat. § 200.310(2) (a person is guilty of kidnapping if he unlawfully “seizes, inveigles, takes, carries away, or kidnaps” another person), with 18 U.S.C. § 1201(a) (a person commits kidnapping if he unlawfully “seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away” another person). Kidnapping could potentially be committed in both jurisdictions without the use of force. Because of the similarities between the Nevada second degree kidnapping statute and the federal kidnapping statute, our reasoning in Delgado-Hemandez is highly persuasive here.
Thus, even though force is not required, second degree kidnapping as defined by Nevada law still presents a serious poten *657 tial risk of physical injury to another.[9] See also United States v. Sherbondy, 865 F.2d at 1009 (“kidnapping entails a ‘serious potential risk of physical injury’ to the victim”); Kaplansky, 42 F.3d at 324 (“kidnapping is the ‘type’ of offense where the risk of physical injury to the victim is invariably present”).
2. Risk of injury roughly similar to the enumerated offenses in the ACCA
The only question remaining, then, is whether second degree kidnapping under Nevada law is a crime that is “roughly similar, in kind as well as in degree of risk posed” to burglary, arson, extortion, or crimes involving the use of explosives. Begay, 553 U.S. at 143, 128 S.Ct. 1581. Like conspiracy to commit robbery, second degree kidnapping is similar to the enumerated crime of burglary.
As we discussed above, “[bjurglary is dangerous because it can end in confrontation leading to violence.” Sykes, 131 S.Ct. at 2273. By comparison, kidnapping is riskier than burglary because “a face-to-face confrontation,” James, 550 U.S. at 203, 127 S.Ct. 1586, with the victim is very likely when a kidnapping occurs. Accordingly, the second prong of the Park framework is satisfied. See, e.g., Delgado-Hernandez, 697 F.3d at 1128-30 (describing the substantial risks kidnapping poses); Sherbondy, 865 F.2d at 1009 (reasoning that kidnapping, as defined in the Model Penal Code, is a violent felony).
3. Conclusion
We conclude that second degree kidnapping in Nevada categorically involves a serious risk that physical force may be used in the course of committing the offense and that this risk is roughly similar to the risk involved in burglary. Accordingly, we hold that second degree kidnapping under Nevada law is categorically a “violent felony” under the residual clause of the ACCA.
III. CONCLUSION
For the foregoing reasons, conspiracy to commit robbery and second degree kidnapping are “violent felonies” under 18 U.S.C. § 924(e)(2)(B)(ii). Accordingly, Chandler is subject to the fifteen-year sentencing enhancement under § 924(e)(1) for having previously been convicted of three violent felonies.
The judgment of the district court is
AFFIRMED,

. Similarly, we have observed that the definition of "crime of violence” in 18 U.S.C. § 924(c) "is very similar to that of ‘violent felony’ in section 924(e)(2)(B).” United States v. Sherbondy, 865 F.2d 996, 1008 n. 15 (9th Cir.1988). Although the definitions are not always interchangeable, similar statutory language suggests that the definitions may be similarly interpreted. United States v. Coronado, 603 F.3d 706, 709 (9th Cir.2010).

. We recently held that a Nevada conviction for conspiracy to commit burglary is not an aggravated felony under the immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(43)(U). United States v. Garcia-Santana, 743 F.3d 666, 2014 WL 667083, No. 12-10471 (9th Cir. Feb. 20, 2014). Garcia-Santana does not govern this case because the INA's aggravated felony definition substantially differs from the ACCA’s definition of a "violent felony.” See Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294, 2300-01, 174 L.Ed.2d 22 (2009). Unlike the ACCA, the INA defines "aggravated felony” to specifically include a "conspiracy to commit” one of its listed offenses, among which is "burglary.” 8 U.S.C. § 1101(a)(43)(U). In Garcia-Santana, therefore, the question presented was whether "conspiracy” — as used in the INA — requires proof of an overt act; we held that it-does. See Garcia-Santana, 743 F.3d at 669-70, 2014 WL 667083, *1. Here, by contrast, we must decide whether a Nevada conviction for conspiracy to commit robbery, even though it does not require an overt act, nonetheless "involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii).

. The firearm sentencing enhancement provision provides that "any person who, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to a term of imprisonment of not less than 5 years.” 18 U.S.C. § 924(c)(1).

. The provision referenced in Mendez — 18 U.S.C. § 924(c)(3)(B) — defines crime of violence for the purposes of the firearm sentencing enhancement provision that was at issue in that case. It states that "the term 'crime of violence’ means an offense that is a felony and ... by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” 18 U.S.C. § 924(c)(3)(B).

. As. Judge Bybee points out, the circuits are split over whether conspiracy to commit a violent felony is itself a violent felony. See Concurrence at 28-29 (Bybee, J., concurring). Given that split, we recognize that Mendez may not survive the Supreme Court’s quartet of ACCA cases. But, at the least, Mendez is not “clearly irreconcilable” with the Supreme Court’s precedent, so we are bound to apply Mendez until it is expressly overruled by an en banc panel of this court. See Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc);

. Indeed, "substantial” is defined as important, essential, "not seeming or imaginary.” Webster’s Third New International Dictionary of the English Language Unabridged (2002). Similarly, "serious” is defined as "[gjrave in disposition, appearance, or manner: not light.” Id.

. Nevada's definition of robbery differs from extortion because the taking of property there must be “against the will” of the victim. But as Professor LaFave has explained, this difference is not significant because "both crimes equally require that the defendant’s threats induce the victim to give up his property, something which he would not otherwise have dpne.” 3W. LaFave, Substantive Criminal Law § 20.4(b) (2d ed.2003).

. In Delgado-Hernandez we also noted that “legislative bodies, including Congress, have consistently treated kidnapping as a crime of violence.” Delgado-Hernandez, 697 F.3d at 1131-33. After surveying the evidence, we concluded: “In sum, numerous courts have held that kidnapping generally presents a risk of substantial force. Congress, the Sentencing Commission, and forty jurisdictions have concluded, consistent with historical practice, that kidnapping is a violent crime.” Id. at 1133.

. If anything, it would seem that Nevada second degree kidnapping categorically presents a greater risk of force than the federal kidnapping statute. Compare Nev.Rev.Stat. § 200.310(2) (requiring that- the action be done "with the intent to keep the person secretly imprisoned within the State,” “for the purpose of conveying the person out of the State, without authority of law,” or "in any manner held to service or detained against the person's will”), with 18 U.S.C. § 1201(a) (lacking the heightened mens rea requirements of the Nevada statute).